UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK LEGAL ASSISTANCE GROUP,

        Plaintiff,

    v.

                             **No. 18 Civ. 9495 (PAC)**

BOARD OF IMMIGRATION APPEALS,
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW, and U.S. DEPARTMENT OF JUSTICE

        Defendants.


## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS THE COMPLAINT AND FOR SUMMARY JUDGMENT


GEOFFREY S. BERMAN
United States Attorney for
Southern District of New York
United States Attorney's Office
86 Chambers Street, Third Floor
New York, New York 10007


Arastu K. Chaudhury
Assistant United States Attorney
     *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .........................................................................................................3

ARGUMENT .............................................................................................................6

    I.       Plaintiff's Only Remedy Under FOIA Is To Obtain the Records ...............................8

    II.      The APA Does Not Apply Because There Is An Adequate Alternative Remedy .......11

    III.    Unpublished Decisions Of The BIA Are Not Final Opinions For The Purposes Of Section 552(a)(2) ........................................................................................13

    IV.   Plaintiff's Request Is Unduly Burdensome And No Response Is Required ................16

    V.    Plaintiff's Claim Can Only Apply To Records After June 30, 2016, The Effective Date Of The FOIA Improvement Act of 2016 ............................................................19

CONCLUSION ...........................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps. v. U.S. Dep't of Commerce*,
   907 F.2d 203 (D.C. Cir. 1990) ..................................................................................... 16, 17, 18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................................ 7

*Ashcroft v. Iqbal*,
   556 U.S. 663 (2009) ................................................................................................................ 7

*Ayuda, Inc. v. FTC*,
   70 F. Supp. 3d 247 (D.D.C. 2014) ................................................................................... 17, 18

*Barnhart v. Sigmon Coal Co.*,
   534 U.S. 438 (2002) .............................................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 7

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ................................................................................................... 11, 13, 19

*Carney v. U.S. Dep't of Justice*,
   19 F.3d 807 (2d Cir. 1994) ...................................................................................................... 7

*Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*,
   643 F.3d 1142 (8th Cir. 2011) .............................................................................................. 12

*Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*,
   846 F.3d 1235, 1243–44 (D.C. Cir. 2017) ..................................................................... *passim*

*Conti v. DHS*, No. 12 Civ. 5827 (AT),
   2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ...................................................................... 17

*Dolan v. U.S. Postal Service*,
   546 U.S. 481 (2006) .............................................................................................................. 14

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*,
   396 F.3d 1265 (D.C. Cir. 2005) ............................................................................................ 12

*Enterprise Mortg. Acceptance LLC, Sec. Litig. v. Enterprise Mortg. Acceptance Co.*,
   391 F.3d 401 (2d Cir. 2004) .................................................................................................. 19

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ............................................................................. 12

*Goland v. CIA*,
    607 F.2d 339 (D.C. Cir. 1978) ............................................................................. 16

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) ................................................................................... 7

*Hainey v. Dep't of Interior*,
    925 F. Supp. 2d 34 (D.D.C. 2013) ....................................................................... 17

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999) ........................................................................... 16, 18

*Int'l Counsel Bureau v. U.S. Dep't of Defense*,
    723 F. Supp. 2d 54 (D.D.C. 2010) ....................................................................... 17

*J.S. v. Attica Central Schs.*,
    386 F.3d 107 (2d Cir. 2004) ................................................................................... 7

*Jones v. U.S. Dep't of Hous. & Urban Dev.*,
    No. 11 CIV. 0846 (RJD) (JMA), 2012 WL 1940845 (E.D.N.Y. May 29, 2012) ................... 12

*Judicial Watch, Inc. v. IRS*,
    Civil No. 13-1759 (EGS), 2015 WL 4072431 (D.D.C. July 3, 2015) ............................... 17, 18

*Kennecott Utah Copper Corp.* v. *United States Dep't of the Interior*,
    88 F.3d 1191 (D.C. Cir. 1996) ..................................................................... 2, 9, 10

*Kissinger v. Reporters Committee for Freedom of the Press*,
    445 U.S. 136 (1980) ................................................................................................ 9

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) .................................................................................. 19, 20, 21

*Lead Indus. Ass'n v. OSHA*,
    610 F.2d 70 (2d Cir. 1979) ................................................................................... 16

*Lindh v. Murphy*,
    521 U.S. 320 (1997) .............................................................................................. 19

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ............................................................................... 6, 7

*Martin v. Hadix*,
    527 U.S. 343 (1999) .............................................................................................. 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................. 7

*N.Y. Times Co. v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ..................................................................... 7

*Nation Magazine v. U.S. Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) ................................................................................. 16

*Natural Res. Def. Council, Inc. v. Muszynski*,
   268 F.3d 91 (2d Cir. 2001) ..................................................................................... 14

*Niagara Mohawk Power Corp. v. FERC*,
   306 F.3d 1264 (2d Cir. 2002) ................................................................................. 11

*NLRB v. Sears, Roebuck, & Co.*,
   421 U.S. 132 (1975) ............................................................................................... 15

*Norton v. Southern Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ................................................................................................. 11

*Panjiva v. U.S. Customs and Border Protection*,
   345 F. Supp. 3d 481 (S.D.N.Y. 2018) ................................................................... 12

*People for the Am. Way Found. v. DOJ*,
   451 F. Supp. 2d 6 (D.D.C. 2006) ........................................................................... 17

*Pereira v. United States Dep't of Justice*,
   No. 16 CIV. 2599 (NRB), 2016 WL 2745850 (S.D.N.Y. May 11, 2016) .......... 11-12

*Rimmer v. Holder*,
   700 F.3d 246 (6th Cir. 2012) ................................................................................. 12

*Ruotolo v. Dep't of Justice*,
   53 F.3d 4 (2d Cir. 1995) ................................................................................... 16, 17

*Schrecker v. Dep't of Justice*,
   349 F.3d 657 (D.C. Cir. 2003) ............................................................................... 16

*Serv. Women's Action Network v. U.S. Dep't of Defense*,
   888 F. Supp. 2d 282 (D. Conn. 2012) .................................................................... 18

*Smith v. Nat'l Transp. Safety Bd.*,
   981 F.2d 1326 (D.C. Cir. 1993) ............................................................................. 15

*Solar Sources, Inc. v. United States*,
   142 F.3d 1033 (7th Cir. 1998) .......................................................................... 17, 18

*Tereshchuk v. Bureau of Prisons,*
   67 F. Supp. 441 (D.D.C. 2014) ................................................................ 15

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
   497 F.3d 144 (2d Cir.2007) ..................................................................... 14

*Trentadue v. FBI,*
   572 F.3d 794 (10th Cir. 2009) ................................................................ 17

*United States v. Dauray,*
   215 F.3d 257 (2d Cir. 2000) .................................................................... 14

*Vietnam Veterans of Am. v. Dep't of Navy,*
   876 F.2d 164 (D.C. Cir. 1989) ................................................................ 15

*Vietnam Veterans of Am. v. DHS,*
   8 F. Supp. 3d 188 (D. Conn. 2014) ......................................................... 17

*Walsh v. U.S. Dep't of Veterans Affairs,*
   400 F.3d 535 (7th Cir. 2005) .................................................................. 12

*Weingarten v. United States,*
   865 F.3d 48 (2d Cir. 2017) ................................................................ 20, 21

*Wolf v. CIA,*
   569 F. Supp. 2d 1 (D.D.C. 2008) ........................................................... 17

*Women's Equity Action League v. Cavazos,*
   906 F.2d 742 (D.C. Cir. 1990) ............................................................... 12

*Zaidan v. Tillerson,*
   No. 17 CIV. 3604 (CBA), 2018 WL 3769966 (E.D.N.Y. Aug. 9, 2018) ............... 12

## Statutes

5 U.S.C. §552(a)(1) ..................................................................................... 8, 10

5 U.S.C. § 552(a)(2) ................................................................................. 8, 10, 21

5 U.S.C. § 552(a)(2)(A) ..................................................................................... 2

5 U.S.C. § 552(a)(3) .......................................................................................... 8

5 U.S.C. § 552(a)(4)(B) ..................................................................................... 9

5 U.S.C. § 704 ............................................................................................ 11, 12

8 U.S.C. § 1252(b)(1) ............................................................................................... 14

8 C.F.R. 1003.1(h) ................................................................................................... 14

8 C.F.R. § 1003.1(g) ........................................................................................... 4, 15

Fed. R. Civ. P. 56 ........................................................................................................ 7

Fed. R. Civ. P 12(b)(1) ............................................................................................... 6

Fed. R. Civ. P 12(b)(6) ............................................................................................... 7

**Other Sources**

H.R. Rep. 89-1497, 1966 U.S.C.C.A.N. 2418 ......................................................... 15

H.R. Rep. 104-795, 1996 U.S.C.C.A.N. 3448 ......................................................... 21

S. Rep. 104-272 ........................................................................................................ 21

BIA Practice Manual ............................................................................................. 4, 15

Immigration Court Practice Manual ..................................................................... 4, 15

Defendants Board of Immigration Appeals ("BIA" or "Board"), Executive Office for Immigration Review ("EOIR"), and United States Department of Justice ("DOJ,"), through their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York (collectively "Defendants" or the "Government"), hereby move to dismiss the complaint filed by plaintiff New York Legal Assistance Group ("Plaintiff") under the Freedom of Information Act ("FOIA") and the Administrative Procedure Act ("APA") for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56.

## PRELIMINARY STATEMENT

Plaintiff seeks an order pursuant to either FOIA or the APA, purportedly to enforce Defendants' affirmative obligations under FOIA Section 552(a)(2), and compelling Defendants to make all unpublished BIA decisions from 1996 to the present publically accessible through the Defendants' electronic reading-room.

Neither FOIA nor the APA entitle Plaintiff to this relief, and, more importantly, Plaintiff's claim that Defendants have shirked their affirmative obligations under FOIA to make the decisions publicly available through an electronic reading-room is without merit.  All precedential BIA decisions can be found on EOIR's electronic reading-room.  The suggestion that Defendants are taking advantage of any purported information asymmetry is simply false— Defendants rely on the same resources, case-specific facts, and BIA precedential decisions to craft their decisions as Plaintiff and other practitioners.  Indeed, the relief Plaintiff seeks would require a vast amount of resources being diverted from other important tasks and expended for negligible benefit: the addition of hundreds of thousands of non-precedential unpublished BIA decisions to the electronic reading room, which is unlikely to make finding relevant cases easier.

Thus, the Court should reject Plaintiff's claim for five reasons.

First, FOIA does not provide the relief that Plaintiff seeks.  Plaintiff does not want the records; rather, Plaintiff seeks to enforce the provision of FOIA requiring agencies to make available for "public inspection in an electronic format" certain types of documents, including "final opinions."  5 U.S.C. § 552(a)(2)(A).  However, a requester's only remedy under FOIA, even if the requester seeks to enforce an affirmative obligation, is to seek production of the agency records in question *to the plaintiff.  See id.* § 552(a)(4)(B); *Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235, 1243–44 (D.C. Cir. 2017); *Kennecott Utah Copper Corp.* v. *United States Dep't of the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996).  Since Plaintiff has specifically disclaimed seeking the relief available to it, Plaintiff's FOIA claim should be dismissed.

Second, Plaintiff cannot obtain relief through the APA because there is an alternative, adequate remedy in the form of a FOIA action seeking to compel the production of the records. The mere fact that the relief Plaintiff demands is not identical to that offered by FOIA does not open a path to relief under the APA because the informational injury suffered by Plaintiff— denial of the records in question—is adequately addressed by a FOIA action.  While the law usually must provide some avenue for relief, it does not have to give a litigant the exact relief sought in the exact manner requested, yet that is what Plaintiff demands here.  The Court should reject this request, and dismiss the Plaintiff's APA claim.

Third, the records in question are not subject to FOIA Section 552(a)(2) because Congress only intended for "final opinions" under the FOIA statute to encompass decisions that have precedential effect and operate with the force of law in subsequent cases.  Unpublished BIA decisions do not meet those criteria.  Thus, Defendants are in compliance with their obligations

under the statute, and the complaint should be dismissed.

Fourth, Plaintiff's claim is unreasonably burdensome.  Plaintiff's claim involves well over 500,000 records, all of which contain personally identifiable information ("PII") or involve issues implicating confidentiality concerns, *e.g.*, asylum or Convention Against Torture.  As a result, Defendants would have to engage in a line-by-line review of the records in question, and expend potentially many years-worth of effort to comply with Plaintiff's request.  FOIA simply does not require Defendants to do so because such a request goes well beyond the scope of the statute.  Thus, Defendants are entitled to summary judgment in their favor.

Finally, even if the Court is inclined to permit Plaintiff's claim to proceed, the claim must be limited to unpublished decisions issued on or after June 30, 2016, the effective date of the FOIA Improvement Act of 2016, because that is the date FOIA's electronic reading-room mandate originally came into effect.

In sum, the Court should dismiss Plaintiff's claim and/or grant summary judgment to Defendants.

## BACKGROUND

On June 8, 2018, NYLAG submitted a FOIA request asking that "*All* nonpublished decisions of the BIA (including concurring and dissenting opinions) from November 1, 1996, through the present" be made available on the agency's electronic reading-room.  Compl. ¶ 25 (emphasis added).  In subsequent correspondence with EOIR, the agency asked NYLAG to narrow its request and offered to provide non-exempt unpublished BIA decisions from 2015-2017 and provide additional decisions upon further request.  *Id.* ¶ 27.  NYLAG clarified that it would not narrow its request, did not want to obtain any copies of the requested records, and, instead, sought to have the agency make the records accessible to the public by posting them in

its electronic reading room.  *Id.* ¶ 28.  On August 8, 2018, EOIR denied NYLAG's request, and

NYLAG appealed that denial on September 11, 2018.  *Id.* ¶¶ 29-30.  On October 17, 2018,

NYLAG filed the current action.

EOIR operates a website that contains an electronic reading-room, where it publishes,

*inter alia*, precedential decisions of the BIA.  *See* Compl. ¶ 15.  Only those BIA decisions that

have been approved "[b]y majority vote of the permanent Board members . . . rendered by a

three-member panel or by the Board en banc" are precedential.  8 C.F.R. § 1003.1(g).  By

contrast, unpublished BIA decisions are expressly non-precedential and have no binding

authority on any other cases or decisions of the EOIR Immigration Courts or the BIA.  *See*

*id.*  Indeed, "[c]itation to non-precedent Board cases by parties not bound by the decision is

discouraged."  BIA Practice Manual, Chapter 4, section 4.6(d)(ii); EOIR Immigration Court

Practice Manual, Appendix J-3 ("[c]itation to the unpublished decisions [in briefs] is discouraged

because these decisions are *not binding* on the Immigration Court in other cases." (emphasis

added)).

NYLAG alleges that the "BIA and immigration judges have access to all of the

unpublished decisions, regardless of their availability to the public."  Compl. ¶ 21. These

allegations are misleading.  While EOIR does maintain an internal repository providing access to

copies of certain BIA decisions, called eDecisions, that repository does not contain every BIA

decision, and it allows users to access decisions by a limited number of search parameters, such

as alien number or "A-Number."  Declaration of Joseph R. Schaaf ("Schaaf Decl.") ¶¶ 17-21.

The BIA and immigration judges cannot search across cases for decisions using textual search

terms or based on topic matter; it simply provides access to individual decisions for individual

aliens.  *See* Schaaf Decl. ¶ 20.

4

NYLAG estimates that its request involves more than 500,000 unpublished decisions, *see* Compl. ¶ 16.  In fact at the time Plaintiff submitted its request, eDecisions contained copies of more than 650,000 BIA decisions for the time period November 1, 1996 through June 8, 2018. Schaaf Decl. ¶¶ 21, 29.  For the time period from Fiscal Year 1997 through Fiscal Year 2017 – a time frame shorter than that specified by Plaintiff in its request – eDecisions contained 626,416 copies of BIA decisions.  Of those decisions, about 55%, or 341,497, are BIA decisions involving Case Appeals that Defendants conservatively estimate have a general page count of four (4) pages approaching 1.4 million pages of documents.  *Id.* ¶¶ 24, 25.  The remaining 45%, or 284,919 BIA decisions, Defendants conservatively estimate to be about one page in length, and thus comprise about 284,919 pages of documents.  *Id.* ¶ 27.  Thus, EOIR would have to review over 1.6 million pages of documents in order to process all of the BIA decisions found in eDecisions.  *See id.* ¶¶ 26, 27.

Defendants estimate that reviewing and redacting the population of BIA decisions identified above will take approximately 26.5 work years to complete—that is, it would take one employee working full-time 26.5 years, at a pace of 50 work weeks per year at 40 hours per week, to complete the task.  *Id.* ¶¶ 26-27, 30.  The BIA decisions at issue all contain significant PII or implicate other FOIA Exemptions, warranting their continued confidentiality, and would require redaction in order to produce.  *Id.* ¶ 24.  Thus, EOIR would have to conduct a line-by-line review of the records to ensure compliance with FOIA.  *Id.*  Given that the total number of pages involved exceeds 1.6 million pages and assuming a FOIA processor can review on average 1,250 pages per week, it would take 22 work years to review and redact Case Appeals and another 4.5 work years to complete the remaining records—totaling 26.5 work years.  *Id.* ¶¶ 26-27.  Even if the entirety of EOIR FOIA personnel authorized to review and redact FOIA documents worked

exclusively on the task of reviewing and redacting unpublished decisions contained in eDecisions, it would take them nearly seven years to complete. *Id.* ¶ 30. Assuming this all-hands scenario, EOIR FOIA could not reasonably respond to any other FOIA request or handle any of the matters currently in litigation during that period. *Id.* Furthermore, this estimate does not include any subsequent review by attorneys and other staff required to protect PII and other sensitive information from inadvertent disclosure. *Id.* ¶¶ 15, 30.

Moreover, not all of the BIA decisions are available through eDecisions. *Id.* ¶ 21. For Fiscal Year 1997 through Fiscal Year 2017, the eDecisions repository contains about 83% of all BIA decisions demanded by Plaintiff. *Id.* ¶ 21. The remaining official copy BIA decisions from that time period exist only in hard-copy and are located at one of 18 Federal Records Centers or the 62 Immigration Courts throughout the United States. *Id.* ¶¶ 19, 21, 28. Those BIA decisions account for an additional 125,848 records. *Id.* ¶ 28. Putting aside for a moment the logistical difficulties in locating, collecting, and scanning those hard-copy records, which is a task too difficult to even estimate at this time, it would take an additional two to eight work years to complete the review and redaction process.[1] *Id.* ¶¶ 26-28, 30. This estimate, again, does not account for any subsequent review necessary before a production of this size could be released. *Id.* ¶¶ 15, 30.

## ARGUMENT

The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure

---

[1] Assuming 124,848 records at one (1) page per document, reviewed at 1,250 pages per week, for 50 weeks, it would take a little over two (2) work years. If one assumes four (4) pages per document, the estimate increases to eight (8)) work years. *See* Schaaf Decl. ¶¶ 26-28, 30.

12(b)(1)[2] and Rule 12(b)(6),[3] or, alternatively, the Government should be granted summary judgment pursuant to Rule 56(a).[4]  First, FOIA does not permit a requester to force changes to an agency's website, but rather, only to obtain the records in question.  Second, because Plaintiff can obtain the records in question through FOIA and that constitutes an adequate alternative remedy – even if Plaintiff chooses not to seek that remedy – the APA provides no path to the relief Plaintiff seeks.  Third, Section 552(a)'s affirmative obligations do not apply to the records at issue because they are not "final opinions" within the ambit of the provision.  Fourth, even if the Court permits the Plaintiff's claim to proceed, the request is so burdensome and unreasonable that FOIA does not require the agency to respond.  Finally, if the Court does not dismiss Plaintiff's claim, it should be limited to records created after June 30, 2016—the effective date of the electronic reading-room provision.

---

[2] Under Rule 12(b)(1), a case is properly dismissed if the district court lacks the power to adjudicate it.  *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  When considering a Rule 12(b)(1) motion, the district court may refer to evidence outside the pleadings.  *Id.*  While the court must accept as true all material factual allegations in the complaint as true, it need not draw all reasonable inferences in Plaintiff's favor.  *See J.S. v. Attica Central Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  Plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Makarova*, 201 F.3d at 113.

[3] Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (internal quotation marks omitted).  As with a challenge brought under Rule 12(b)(1), courts assume "that all of the complaint's allegations are true."  *Id.* at 555.  However, this assumption does not excuse a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

[4] Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The moving party bears the burden of showing that it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required."  *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (brackets and internal quotation marks omitted).  Agency affidavits are "accorded a presumption of good faith," which "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (internal quotation marks and citations omitted).  Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face."  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

## I.   Plaintiff's Only Remedy Under FOIA Is To Obtain The Records

Plaintiff cannot compel an agency to change its website through FOIA.  For violation of any of the obligations under FOIA, whether affirmative or responsive, the remedy is for the plaintiff to obtain the records.  Plaintiff has expressly stated that its claim is limited to compelling Defendants to add the records at issue to their website's electronic reading-room—Plaintiff is not seeking to receive the requested documents.  Compl. ¶ 28.  Thus, Plaintiff's claim should be dismissed.

In addition to the requirement that an agency respond to a specific request for records, 5 U.S.C. § 552(a)(3), FOIA creates certain affirmative obligations for agencies, 5 U.S.C. §§ 552(a)(1)-(2).  At issue here is the affirmative obligation that an agency "make available for public inspection in electronic format  . . . final opinions . . . made in the adjudication of cases . . . unless the materials are promptly published and copies offered for sale."  *Id.* § 552(a)(2).  An agency may "rel[y] on, use[], or cite[] as precedent" a final opinion "only if . . . (i) [it has been] made available or published as provided by this paragraph; or (ii) the party has actual and timely notice of the terms thereof."  *Id.*

FOIA provides that an individual may make a "*request for records* . . . under paragraph (1), (2), or (3) of [§ 552(a)]."  *Id.* §552(a)(6)(A) (emphasis added); *see also id.* § 552(a)(6)(C)(i) If the agency fails to respond within the time allotted by statute or if the requester is unsatisfied with the result of the administrative process, the requester may file a complaint in the appropriate federal court.  *Id.* §§ 552(a)(6)(A), 552(a)(6)(C)(i).  In such a case, the court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency

records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).  "[A] court has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading-room provision . . . [but may], consistent with section 552(a)(4)(B), order[] an agency to provide to the plaintiff documents covered by the reading-room provision." *See Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235, 1243–44 (D.C. Cir. 2017) ("CREW"); *Kennecott Utah Copper Corp.* v. *United States Dep't of the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996).

The D.C. Circuit in *CREW* denied a very similar claim to the one Plaintiff asserts here. In *CREW*, the plaintiff filed a complaint, seeking to have DOJ's Office of Legal Counsel ("OLC") comply with its obligations under FOIA Section 552(a)(2)(A), including making records available on its website.  *CREW*, 846 F.3d at 1240.  The court held that FOIA does provide a remedy for a violation of Section 552(a)(2), but that remedy was for the plaintiff to obtain the records in question.  *Id.* at 1243–44.  In determining that the plaintiff was not entitled to an injunction to force the agency to change its website, the court focused on the jurisdictional grant provided for in Section 552(a)(4)(B).  While FOIA does provide broad remedial authority, the court held that such authority "is not boundless."  *Id.* at 1242 (discussing *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 139 (1980)).  In particular, the D.C. Circuit reiterated its holding in *Kennecott* that Section 552(a)(4)(B) "is aimed at relieving the injury suffered by the individual complainant, not by the general public as it allows district courts to order 'the production of any agency records improperly withheld *from the complainant*,' not agency records withheld from the *public*."  *Id.* at 1243 (quoting *Kennecott*, 88 F.3d at 1203) (quoting 5 U.S.C. § 552(a)(4)(B))) (emphasis in original) (internal quotation marks from *CREW* omitted).

In *Kennecott*, the D.C. Circuit addressed whether its remedial powers provided in 552(a)(4)(B) permit a court to order an agency to comply with its obligations under 552(a)(1) to publish information, including where to make requests to an agency, rules of procedure, and substantive rules of general applicability, in the Federal Register.  88 F.3d at 1202.  The court held that grant of jurisdiction to order "production" of agency records, as a matter of statutory interpretation, did not encompass the power to order an agency to "publish" those same records. *Id.* at 1203.  The *Kennecott* court reached this conclusion based on two aspects of the statute. First, Section 552(a)(4)(B) provides the court with powers in the context of an action filed by a FOIA requester contesting an agency's withholding of records from that requester, and "[p]roviding documents to the individual fully relieves whatever informational injury may have been suffered by that particular complainant; ordering publication goes well beyond that need." *Id.*  Second, FOIA itself creates adverse consequences for an agency's noncompliance with its affirmative obligations under 552(a)(1)(A), namely, if an agency fails to publish a regulation covered by that provision, FOIA shields any individual from being "adversely affected by" the regulation, unless that individual is given actual and timely notice of it.  *Id.* (quoting 5 U.S.C. §552(a)(1)).  Thus, the court held the relief available under FOIA is limited to the production of records to a requester asserting a claim under either the affirmative or responsive provisions of FOIA.  *Id.*

The Complaint here implicates the same issues and considerations addressed in *Kennecott* and *CREW*: Plaintiff sues, seeking a remedy under Section 552(a)(4)(B), Compl. ¶ 2, pursuant to a FOIA provision creating an affirmative obligation that also contains the same statutory shield for affected individuals if the agency does not comply with its obligations, 5 U.S.C. § 552(a)(2). While the decisions of the D.C. Circuit in *Kennecott* and *CREW* are not

binding, they are well-reasoned, persuasive authority, properly construing FOIA's statutory language to provide the district court remedial powers appropriately tailored to an action under FOIA.  Plaintiff's claim for relief goes well beyond what FOIA provides, and asks this Court to inappropriately order general compliance with the statute.  *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004) (holding that courts are not "empowered to enter general orders compelling compliance with broad statutory mandates").  Thus, the Court should hold that FOIA does not provide the relief Plaintiff seeks, namely to compel Defendants to add records to their website, and thus, the FOIA claims should be dismissed.

## II.        The APA Does Not Apply Because There Is An Adequate Alternative Remedy

Plaintiff's APA claim should be dismissed because Plaintiff has an adequate alternative remedy in the form of a FOIA action.  The mere fact that the available relief—receiving the records in question—is not precisely what Plaintiff wants does not render a FOIA action inadequate.  Plaintiff's alleged injury is that the unpublished BIA decisions are not readily available, and FOIA allows them to obtain those records, disseminate them, and thereby, remedy the injury.  That constitutes an alternative, adequate remedy, and permitting Plaintiff's APA claim to proceed would be impermissibly duplicative.

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704. The requirement that "there be no other adequate remedy" for review to be appropriate under the APA "reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'"  *CREW*, 846 F.3d at 1244 (quoting *Bowen v. Massachusetts*, 487 U.S. 879,

903 (1988)).  "When another statutory vehicle provides an adequate remedy in a court, claims

brought under the APA are properly dismissed."  *Pereira v. United States Dep't of Justice*, No.

16 CIV. 2599 (NRB), 2016 WL 2745850, at *13 (S.D.N.Y. May 11, 2016); *see also Niagara*

*Mohawk Power Corp. v. FERC*, 306 F.3d 1264, 1268–69 (2d Cir. 2002).

"Alternative remedies need not be *identical* to bar review under § 704; they need only be

adequate."  *Panjiva v. U.S. Customs and Border Protection*, 345 F. Supp. 3d 481, 495 (S.D.N.Y.

2018) (quoting *Zaidan v. Tillerson*, No. 17 CIV. 3604 (CBA), 2018 WL 3769966, at *3

(E.D.N.Y. Aug. 9, 2018)) (emphasis added).  Alternate remedies "will be deemed adequate

'where a statute affords an opportunity for de novo district court review' of the agency action."

*Garcia v. Vilsack*, 563 F.3d 519, 522-23 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz*

*Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270

(D.C. Cir. 2005)).  The relief available in non-APA actions "may be adequate" within the

meaning of 5 U.S.C. § 704 "even if such actions . . . 'may be more arduous, and less effective in

providing systemic relief, than continuing judicial oversight of federal government

enforcement.'"  *Garcia*, 563 F.3d at 525 (quoting *Women's Equity Action League v. Cavazos*, 906

F.2d 742, 751 (D.C. Cir. 1990)).  Moreover, a plaintiff need not succeed on the merits of the

alternative for it to be considered "adequate."  *Rimmer v. Holder*, 700 F.3d 246, 261–62 (6th Cir.

2012); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11 CIV. 0846 (RJD) (JMA), 2012 WL

1940845, at *6 (E.D.N.Y. May 29, 2012) (an alternative was adequate "whether or not relief is

ultimately granted").

Courts have consistently held that a request for documents under FOIA operates as an

adequate remedy, precluding invocation of the APA.  *See CREW*, 846 F.3d at 1244–46; *Walsh v.*

*U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 538 (7th Cir. 2005); *Cent. Platte Nat. Res. Dist. v.*

*U.S. Dep't of Agric.*, 643 F.3d 1142, 1148–49 (8th Cir. 2011); *Rimmer*, 700 F.3d at 262; *Panjiva*, 345 F. Supp. 3d at 495.   *CREW* is particularly instructive on this point because it addressed an APA claim seeking the same relief that Plaintiff seeks here.   In *CREW*, the D.C. Circuit held that FOIA provided an alternative, adequate remedy because: (1) "FOIA contains an express private right of action and provides review in such cases shall be '*de novo*;" (2) a plaintiff may bring a "FOIA claim to enforce the reading-room provision;" and (3) "creation of both agency obligations and a mechanism for judicial enforcement in the same legislation suggests that FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired."   *CREW*, 846 F.3d at 1245.   Thus, the court determined that FOIA offered "precisely the kind of 'special and adequate review procedure[ ]' that Congress immunized from "duplic[ative]' APA review."   *Id.* at 1246 (quoting *Bowen*, 487 U.S. at 903).   The *CREW* court noted that unlike *Bowen*, where the Supreme Court held that "an alternative remedy that offered only monetary relief as an inadequate substitute for the 'general equitable powers of a district court,'" there was "no yawning gap between the relief FOIA affords and the relief [the plaintiff] seeks under the APA."   *Id.* (quoting *Bowen*, 487 U.S. at 905).   In sum, FOIA provides an alternative, adequate remedy, and Plaintiff's APA claim should be dismissed.

**III.   Unpublished Decisions Of The BIA Are Not Final Opinions For The Purposes Of Section 552(a)(2)**

The Court should dismiss Plaintiff's claims because the records in question are not within the ambit of Section 552(a)(2).   While Plaintiff asserts that the BIA's unpublished decisions constitute "final opinions" under Section 552(a)(2)(A), Compl. ¶¶ 35-36, 39, Congress intended for that FOIA provision to encompass only precedential decisions, which unpublished BIA decisions are not.   Since Defendants make available all precedential opinions of the BIA in their electronic reading room, Compl. ¶ 15, Defendants have complied with their obligations under

13

Section 552(a)(2).

In order to address this argument, the Court must interpret Section 552(a)(2). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006). The starting point for this process "is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). This requires the Court "to determine whether the language at issue has a plain and unambiguous meaning with regard to *the particular dispute in the case*." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (emphasis added); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 157 (2d Cir.2007) ("[F]undamental to any task of interpretation is the principle that text must yield to context."). Where "the plain meaning of a statute is susceptible to two or more reasonable meanings, then a court should turn to other methods of discerning meaning, including canons of statutory construction and legislative history. *Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001).

Beginning with the plain meaning of the statute, the statute does not define "final opinion," or provide direction about how it should apply in the context of immigration decisions. Not only are BIA opinions subject to appeal to the U.S. Court of Appeals in which the immigration court sits, 8 U.S.C. § 1252(b)(1), but BIA decisions are also subject to review by the Attorney General, 8 C.F.R. 1003.1(h). Thus, without more, the term "final opinion" does not on its own establish whether entire classes of BIA decision, *e.g.*, a BIA decision under Attorney General review, a BIA decision appealed to a Court of Appeals, or, indeed, an immigration court decision, falls within the ambit of Section 552(a)(2)(A). Thus, the Court needs to reach beyond the term itself to determine the precise meaning of "final opinion" as applied to this case.

14

In particular, the legislative history of the FOIA statute reveals that the Government's reading of the term is consistent with Congress' intent and the purpose of the statutory provision. Congress included in the 1967 version of FOIA the affirmative obligation to "make available for public inspection and copying . . . final opinions . . . made in the adjudication of cases . . . unless the materials are promptly published and copies offered for sale."  P.L. 90-23, 81 Stat. 54 (June 5, 1967).  Congress included this affirmative obligation to reflect "a strong congressional aversion to 'secret law,' and represents an affirmative congressional purpose to require disclosure of documents which have the 'force and effect of law.'" *NLRB v. Sears, Roebuck, & Co.,* 421 U.S. 132, 153 (1975) (quoting H.R. Rep. 89-1497, 1966 U.S.C.C.A.N. 2418, 2424). "Congress thereby meant for the agency to disclose 'all the documents having precedential significance.'"  *Smith v. Nat'l Transp. Safety Bd.*, 981 F.2d 1326, 1328 (D.C. Cir. 1993) (quoting H.R. Rep. 89-1497)).  Thus, "[r]ecords that have no precedential value and do not constitute working law of the agency are not required to be made available under [Section 552(a)(2)]." *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 441, 456 (D.D.C. 2014) (citing *Sears*, 421 U.S. at 153–54); *see also Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164 (D.C. Cir. 1989) (holding only opinions that "operated at law" were subject to Section 552(a)(2)).

Indeed, only specific BIA decisions have precedential effect and operate as law in subsequent cases, namely, those decisions selected by a majority vote of the permanent Board members and rendered by a three-member panel or by the Board en banc.  8 C.F.R. § 1003.1(g). Unpublished BIA decisions not deemed precedential by the BIA cannot operate as law, and thus, cannot be "final opinions" for the purposes of Section 552(a)(2).  Citations to unpublished BIA decisions are expressly "discouraged" for this reason.  BIA Practice Manual, Chapter 4, section 4.6(d)(ii); Immigration Court Practice Manual, Appendix J-3.  Moreover, hewing to Plaintiff's

15

interpretation of the term would generate an absurd, unworkable result because, as discussed below in Section IV, the vast quantity of information Plaintiff's request encompasses is simply beyond what can be required by FOIA.  Thus, "final opinions" should not be read within the scope of the FOIA statute to include unpublished BIA decisions, and Plaintiff's claim should be dismissed.

## IV.   Plaintiff's Request Is Unduly Burdensome And No Response Is Required

If Plaintiff's claims are not dismissed, the Court should grant Defendants summary judgment because Plaintiff's request is unreasonably burdensome.  Responding to this request would consume a substantial portion of the FOIA processing resources available to EOIR for years.  FOIA does not require diverting so much of an agency's time and resources to a single request.

An agency must take reasonable steps to respond to a request, but no more; if responding would unreasonably burden the agency, it need not do so.  *See  Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999);  *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 9 (2d Cir. 1995);  *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979).  An agency need not respond to a request that is "so broad as to impose an unreasonable burden upon the agency"—such as by "requir[ing] the agency to locate, review, redact, and arrange for inspection a vast quantity of material."  *Am. Fed'n of Gov't Emps. v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) ("An agency need not honor a request that requires an 'unreasonably burdensome search.'" (quoting *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)));  *see also Schrecker v. Dep't of Justice*, 349 F.3d 657, 664 (D.C. Cir. 2003) ("We have held that there are limits to the lengths to which an agency must go in responding to a FOIA request.");  *Nation Magazine v. U.S. Customs Serv.*, 71

F.3d 885, 891 (D.C. Cir. 1995) ("[T]here are some limits on what an agency must do to satisfy its FOIA obligations.").

Nor is an agency required to "provide every nonexempt requested document regardless of the cost of locating it." *Trentadue v. FBI*, 572 F.3d 794, 797 (10th Cir. 2009); *see also Conti v. DHS*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) (DHS not required to search disaster recovery system because of the number of emails on that system and the undue burden such a search would require); *Hainey v. Dep't of Interior*, 925 F. Supp. 2d 34, 45 (D.D.C. 2013) (holding that it would be unreasonably burdensome to require the agency to search and review "every email sent or received by 25 different employees throughout a two-year time period"); *People for the Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 12-13 (D.D.C. 2006) (manual search of 44,000 files across 93 offices would be unduly burdensome).

Courts have found it unreasonable to require an agency to search many thousands of pages of records, *see Ruotolo*, 53 F.3d at 9 (citing cases), or to have multiple staffers work full-time for a year locating records, *see Int'l Counsel Bureau v. U.S. Dep't of Defense*, 723 F. Supp. 2d 54, 59-60 (D.D.C. 2010); *see also Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (request requiring eight work-years to segregate exempt portions from non-exempt portions was unreasonable); *Judicial Watch, Inc. v. IRS*, Civil No. 13-1759 (EGS), 2015 WL 4072431, at *7 (D.D.C. July 3, 2015) (finding search of approximately 16,000 employee email accounts would be unreasonably burdensome); *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (finding unreasonably burdensome an estimated 8,000 hours of labor to manually redact millions of consumer complaints); *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (search of microfilm files requiring frame-by-frame review that would take an estimated 3,675 hours and cost $147,000 was an undue burden).

17

In short, FOIA simply does not "require the agency" to process such "a vast quantity of material." *Am. Fed. of Gov't Emps.*, 907 F.2d at 209; *see also Vietnam Veterans of Am. v. DHS*, 8 F. Supp. 3d 188, 203-04 (D. Conn. 2014) (FOIA request for which agency would need to locate, review, and make heavy redactions to 26,000 packets, each of which contained 50 pages, was unreasonably burdensome); *Serv. Women's Action Network v. U.S. Dep't of Defense*, 888 F. Supp. 2d 282, 290-91 (D. Conn. 2012) (FOIA request posed unreasonable burden where search would cost nearly $45 million and take upwards of 2,300 work years to complete), *aff'd*, 570 F. App'x 54 (2d Cir. 2014) (summary order).

Here, responding to Plaintiff's request will entail a huge expenditure of resources. Defendants estimate that preparing for release only the most easily accessible decisions demanded by Plaintiff – those available as copies within eDecisions – will take 26.5 work years to complete, and this does not account for multiple layers of review required to prevent inadvertent disclosure of PII and other sensitive information.  Schaaf Decl. ¶¶ 26-27, 30.  Even if the entirety of EOIR FOIA personnel authorized to review and redact FOIA documents worked exclusively on the task of reviewing and redacting unpublished decisions contained in eDecisions, it would take them nearly seven years to complete the task, during which time EOIR FOIA would not be able to accomplish any other FOIA related tasks. *Id.* ¶¶ 26-27.  Additionally, this estimate does not take into account the additional burden of identifying, physically retrieving, scanning, and performing multiple layers of review for BIA decisions that are not accessible through the eDecisions platform and available only in hard-copy—a process not quantifiable at this point in time.  *Id.* ¶ 28.  Requiring Defendants to spend such significant time and resources responding to a single request goes far beyond what FOIA requires.  *See, e.g., Am. Fed. of Gov't Emps.*, 907 F.2d at 209; *Halpern*, 181 F.3d at 288; *Solar Sources*, 142 F.3d at

1039; *Judicial Watch*, 2015 WL 4072431, at *7; *Ayuda*, 70 F. Supp. 3d at 275.  Thus, the Court should grant summary judgment in favor of the Defendants.

**V.     Plaintiff's Claim Can Only Apply to Records After June 30, 2016, the Effective Date of the FOIA Improvement Act of 2016**

If the Court does not dismiss the complaint or grant summary judgment in the Government's favor, then it should still limit Plaintiff's claim to only unpublished decisions issued on or after June 30, 2016, which is the effective date of the FOIA Improvement Act of 2016 (the "2016 Act").  The 2016 Act created the electronic reading room requirement.  *See* P.L. 114-185, 130 Stat. 538, 538 (June 30, 2016).  Prior to the Act, Section 552(a)(2) only required an agency to make records available "for public inspection and copying," and the 2016 Act struck that language and inserted the current language: "for public inspection in an electronic format." *Id.*  The 2016 Act also states that its terms "shall take effect on the date of enactment of this Act and shall apply to any request for records under section 552 of title 5, United States Code, made after the date of enactment of this Act."  *Id.* at 544–45.  Thus, for the 2016 Act to apply to records created before the effective date of the Act, it would have to have retroactive effect.

"[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."  *Bowen*¸ 488 U.S. at 208.  For a statute to have retroactive effect, Congress must evince "clear intent . . . that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits."  *Landgraf v. USI Film Products*, 511 U.S. 244, 272–73 (1994).  Thus, those "cases where [the] Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear it could sustain only one interpretation."  *Lindh v. Murphy*, 521 U.S. 320, 328 n. 4 (1997).

Courts apply "a two-part test for determining whether a statute applies retroactively."

*Enterprise Mortg. Acceptance LLC, Sec. Litig. v. Enterprise Mortg. Acceptance Co.*, 391 F.3d 401, 405 (2d Cir. 2004). "At the first stage, a court must 'determine whether Congress has expressly prescribed the statute's proper reach,'" and if so, "enforce[] the statute as it is written." *Id.* (quoting *Landgraf*, 511 U.S. at 280). On the other hand, "If the statute is ambiguous or contains no express command," *id.*, then the court must determine whether the statute would have "impermissible retroactive effect," *e.g..*, "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past," *Weingarten v. United States*, 865 F.3d 48, 56 (2d Cir. 2017) (quoting *Landgraf*, 511 U.S. at 280) (internal quotation marks omitted).

Here, the 2016 Act is not retroactive, and would result in impermissible retroactive effect if construed otherwise. The 2016 Act sets forth that the obligations that it creates "shall take effect on the date of enactment," and that the Act applies only to requests "made after the date of enactment." P.L. 114-185, 130 Stat. at 544–45. This language unambiguously addresses the temporal reach of the Act. *See Landgraf*, 511 U.S. at 255–56 & n.8 (stating that the language "all proceedings pending on or commenced after the date of enactment" amounted to "an explicit retroactivity command"); *Martin v. Hadix*, 527 U.S. 343, 354 (1999) (describing the sentence, "'[t]he new provisions shall apply to all proceedings pending on or commenced after the date of enactment'" as "unambiguously address[ing] the temporal reach of the statute" (quoting *Landgraf*, 511 U.S. at 260). It is unequivocal that the changes are prospective in nature only. There is no indication of any retroactive application, and thus, no ambiguity. Therefore, the statute cannot be interpreted to have retroactive effect. Even if the Court were to discern some ambiguity in support of applying the Act retroactively, the statute would have impermissible retroactive effects because prior to the 2016 Act, agencies were not required to have an

electronic reading-room, and could choose to disseminate materials subject to Section 552(a)(2) by other means.

Nor can retroactivity be inferred from the language "[f]or records created on or after November 1, 1996, within one year after such date, each agency shall make such records available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means." 5 U.S.C. § 552(a)(2). Indeed, the foregoing language highlights how significant a change the 2016 Act worked on a federal agency's FOIA compliance obligations.  The quoted provision required agencies to make records subject to the Section available in electronic form in addition to having them in hard copy, and allowed agencies to provide copies of records on media, *e.g.*, CD or DVD.  *See* H.R. Rep. 104-795 at 20, 1996 U.S.C.C.A.N. 3448, 3463; S. Rep. 104-272 at 11.  The quoted language thus permitted an agency some discretion about the manner in which to handle records subject to the provision, and, more importantly, the language did not require that an agency have an electronic reading-room.  It was not until the 2016 Act that Congress expressly mandated that the records subject to Section 552(a)(2) must be made available on an agency's website.  *See* P.L. 114-185, 130 Stat. at 538; S. Rep. 114-4 (The Act "amends the existing requirements that certain records and reports be made available for public inspection to mandate that records available for public inspection be made available in an electronic format.").  In short, the 2016 Act fundamentally changed agencies' affirmative obligations under FOIA, and thus, its application should not be retroactive.  *See Weingarten*, 865 F.3d at 56 (quoting *Landgraf*, 511 U.S. at 280).

21

## CONCLUSION

Based on the foregoing, the Court should dismiss complaint, and/or grant summary

judgment in favor of the Government.

Dated: New York, New York
       March 1, 2019

                                      GEOFFREY S. BERMAN
                                      United States Attorney for the
                                      Southern District of New York

BY: */s/Arastu K. Chaudhury*
                                      ARASTU K. CHAUDHURY
                                      Assistant United States Attorney
                                      86 Chambers Street, 3d Floor
                                      New York, NY 10007
                                      (212) 637-2633
                                      *Attorney for the Government*

To:     All counsel of record (by ECF)