UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| NEW YORK LEGAL ASSISTANCE GROUP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No.    18 Civ. 9495 (PAC) |
| BOARD OF IMMIGRATION APPEALS, | ) ) ) |
| EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | ) ) ) |
| and | ) ) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) |
| Defendants. | ) ) |

_____

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................1

LEGAL STANDARD....................................................................................................3

ARGUMENT ...............................................................................................................4

    I.      FOIA's affirmative disclosure provision is enforceable under FOIA. ..........................5

    II.     Alternatively, FOIA's affirmative disclosure provision is enforceable under the APA..............................................................................................................10

    III.    The BIA's unpublished decisions are subject to § 552(a)(2).....................................13

    IV.   Compliance with FOIA's affirmative disclosure mandate is not unduly burdensome. .................................................................................................17

    V.    FOIA requires defendants to publicly post in an electronic format all unpublished BIA decisions issued since November 1, 1996. ....................................22

CONCLUSION............................................................................................................25

CERTIFICATE OF SERVICE .......................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. United States Department of Defense*,
    901 F.3d 125 (2d Cir. 2018)..................................................................4

*ACLU v. DOJ*,
    252 F. Supp. 3d 217 (S.D.N.Y. 2017)..........................................21

*American Federation of Government Employees v. United States Department of Commerce*,
    907 F.2d 203 (D.C. Cir. 1990)................................................20, 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................4

*Ashcroft v. Iqbal*,
    566 U.S. 662 (2009)..............................................................4

*Ayuda, Inc. v. FTC*,
    70 F. Supp. 3d 247 (D.D.C. 2014)................................................21

*Bowen v. Michigan Academy of Family Physicians*,
    476 U.S. 667 (1986)..............................................................11

*Bustamante v. Napolitano*,
    582 F.3d 403 (2d Cir. 2006)......................................................14

*Carney v. DOJ*,
    19 F.3d 807 (2d Cir. 1994)........................................................7

*Central Platte Natural Resources District v. USDA*,
    643 F.3d 1142 (8th Cir. 2011) ..................................................12

*Citizens for Responsibility & Ethics in Washington v. DOJ*,
    846 F.3d 1235 (D.C. Cir. 2017) .............................................8, 9, 13

*Conti v. DHS*,
    No. 12 Civ. 5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ..........20

*Department of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001)................................................................19

*DOJ v. Tax Analysts*,
    492 U.S. 136 (1989)..............................................................19

*Fox News Network, LLC v. Board of Governors of the Federal Reserve System*,
　　601 F.3d 158 (2d Cir. 2010)................................................................................7

*Grand Central Partnership v. Cuomo*,
　　166 F.3d 473 (2d Cir. 1999).........................................................................7, 20

*GTE Sylvania, Inc. v. Consumers Union of United States, Inc.*,
　　445 U.S. 375 (1980)..................................................................................19

*Hainey v. Department of Interior*,
　　925 F. Supp. 2d 34 (D.D.C. 2013)....................................................................21

*Halpern v. FBI*,
　　181 F.3d 279 (2d Cir. 1999)..........................................................................20

*International Counsel Bureau v. United States Department of Defense*,
　　723 F. Supp. 2d 54 (D.D.C. 2010)....................................................................20

*Judicial Watch, Inc. v. IRS*,
　　No. 13-1759 (EGS), 2015 WL 4072431 (D.D.C. July 3, 2015) ........................................20

*Kennecott Utah Copper Corp. v. United States Department of Interior*,
　　88 F.3d 1191 (D.C. Cir. 1996)..........................................................................9

*Kissinger v. Reporters Committee for Freedom of the Press*,
　　445 U.S. 136 (1980)....................................................................................6

*Landgraf v. USI Film Products*,
　　511 U.S. 244 (1994)...................................................................................25

*Lead Industries Ass'n, Inc. v. OSHA*,
　　610 F.2d 70 (2d Cir. 1979).............................................................................21

*Mastafa v. Chevron Corp.*,
　　770 F.3d 170 (2d Cir. 2014)..........................................................................3, 4

*Mehta v. INS*,
　　574 F.2d 701 (2d Cir. 1978)..........................................................................15

*Milner v. Department of Navy*,
　　562 U.S. 562 (2011)....................................................................................4

*Nation Magazine, Washington Bureau v. United States Customs Service*,
　　71 F.3d 885 (D.C. Cir. 1995)..........................................................................20

*National Archives & Records Administration v. Favish*,
    541 U.S. 157 (2004) ..........................................................................................11

*New Prime v. Oliveira*,
    139 S. Ct. 532 (2019) .......................................................................................14

*New York City Employees Retirement System v. SEC*,
    45 F.3d 7 (2d Cir. 1995) ..................................................................................11

*New York Times Co. v. DOJ*,
    756 F.3d 100 (2d Cir. 2014) ..............................................................................7

*New York Times Co. v. United States Secret Service*,
    No. 17 Civ. 1885 (PAC), 2018 WL 722420 (S.D.N.Y. Feb. 5, 2015) ...............4

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ...........................................................................................4

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) .................................................................................14, 16

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ...........................................................................................10

*Panjiva v. United States Customs & Border Protection*,
    342 F. Supp. 3d 481 (S.D.N.Y. 2018) ...........................................................7, 12

*Payne Enterprises, Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) ...........................................................................7

*People for the American Way Foundation v. DOJ*,
    451 F. Supp. 2d 6 (D.D.C. 2006) .....................................................................20

*Pietrangelo v. United States Army*,
    341 F. App'x 358 (2d Cir. 2009) .......................................................................7

*Renegotiation Board v. Bannercraft Clothing Co.*,
    415 U.S. 1 (1974) ...............................................................................................6

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004) .........................................................................................25

*Reynolds v. Attorney General of the United States*,
    391 F. App'x 45 (2d Cir. 2010) .......................................................................7–8

*Rimmer v. Holder*,
    700 F.3d 246 (6th Cir. 2012) ................................................................12

*Ruotolo v. DOJ, Tax Division*,
    53 F.3d 4 (2d Cir. 1995)............................................................18, 20

*Schrecker v. DOJ*,
    349 F.3d 657 (D.C. Cir. 2003) ..........................................................19, 20

*Service Women's Action Network v. Department of Defense*,
    888 F. Supp. 2d 282 (D. Conn. 2012) ...............................................21

*Seife v. United States Department of State*,
    298 F. Supp. 3d 592 (S.D.N.Y. 2018)................................................20

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008).................................................................11

*Smith v. National Transportation Safety Board*,
    981 F.2d 1326 (D.C. Cir. 1993) ........................................................16

*Solar Sources, Inc. v. United States*,
    142 F.3d 1033 (7th Cir. 1998) ..........................................................21

*Taggart v. Office of the Inspector General*,
    No. 10 Civ. 5447 (PGG), 2011 WL 13128214 (S.D.N.Y. Sept. 22, 2011) ......................19

*Tereschuk v. Bureau of Prisons*,
    67 F. Supp. 3d 441 (D.D.C. 2014) ...............................................16, 17

*Trentadue v. FBI*,
    572 F.3d 794 (10th Cir. 2009) ..........................................................20

*Vietnam Veterans of America v. Department of Navy*,
    876 F.2d 164 (D.C. Cir. 1989) ..........................................................16

*Vietnam Veterans of America Connecticut Greater Hartford Chapter v. DHS*,
    8 F. Supp. 3d 188 (D. Conn. 2014)....................................................21

*Walsh v. United States Department of Veteran Affairs*,
    400 F.3d 535 (7th Cir. 2005) ............................................................12

*Wolf v. CIA*,
    569 F. Supp. 2d 1 (D.D.C. 2008) ......................................................20

**Administrative Decisions**

*In re Alvarez Fernandez*,
    2014 WL 4966372 (BIA Sept. 23, 2014)...........................................................................2

*In re Arangure*,
    2017 WL 1951527 (BIA Apr. 7, 2017)...........................................................................2

*In re Arieli*,
    2006 WL 3203647 (BIA Aug. 30, 2006)...........................................................................2

*In re Bayoh*,
    2018 WL 4002292 (BIA June 29, 2018)...........................................................................2

*In re Cai*,
    2015 WL 1208206 (BIA Feb. 12, 2015)...........................................................................2

*In re Garcia-Linares*,
    21 I. & N. Dec. 254 (BIA 1996) ...........................................................................2

*In re Iqbal*,
    2007 WL 2074540 (BIA June 19, 2007) ...........................................................................2

*In re Johnson*,
    2005 WL 1766782 (BIA May 3, 2005) ...........................................................................2

*In re L–A–B–R*,
    (BIA Nov. 20, 2017), https://www.justice.gov/eoir/page/file/1050451/download ...........22

*In re Lima*,
    2008 WL 4222170 (BIA Aug. 29, 2008)...........................................................................2

*In re Martinez*,
    2016 WL 8471078 (BIA Dec. 30, 2016) ...........................................................................3

*In re Morales*,
    21 I. & N. Dec. 130 (BIA 1995) ...........................................................................2

*In re Negrete-Rodriguez*,
    2006 WL 2183402 (BIA June 19, 2006) ...........................................................................2

*In re Perez-Herrera*,
    2018 WL 4611455 (BIA Aug. 20, 2018) ...........................................................................2

*In re Persaud*,
    2010 WL 1747399 (BIA Apr. 15, 2010)...........................................................................2

*In re Razo*,
    2017 WL 7660432 (BIA Oct. 16, 2017) ..................................................................2

*In re Stewart*,
    2016 WL 4035746 (BIA June 30, 2016) ................................................................2

*In re Tolase*,
    2010 WL 3355110 (BIA July 29, 2010) .................................................................2

*In re Yanez*,
    2012 WL 5473648 (BIA Oct. 18, 2012) ................................................................2

*In re Zea-Flores*,
    2011 WL 1570463 (BIA Apr. 6, 2011) ..................................................................2

*In re* [Name Redacted],
    (BIA Jan. 3, 2018), https://www.justice.gov/eoir/page/file/1051196/download ..............22

*Matter of Echeveria*,
    25 I. & N. Dec. 512 (BIA 2011) ...........................................................................2

**Statutes, Rules, and Regulations**

5 U.S.C. § 551(6) ..........................................................................................................14

5 U.S.C. § 551(7) ..........................................................................................................14

5 U.S.C. § 552(a) ............................................................................................................5

5 U.S.C. § 552(a)(1) ........................................................................................................5

5 U.S.C. § 552(a)(2) ................................................................................................*passim*

5 U.S.C. § 552(a)(2)(A) .................................................................................5, 10, 14, 16

5 U.S.C. § 552(a)(2)(E)(i)–(ii) ......................................................................................9

5 U.S.C. § 552(a)(3) ........................................................................................................6

5 U.S.C. § 552(a)(4)(B) ...........................................................................................4, 6, 7

5 U.S.C. § 704 .........................................................................................................5, 10

8 U.S.C. § 1252(a)(1) ......................................................................................................2

8 U.S.C. § 1252(b)(1) ....................................................................................................15

28 U.S.C. § 1291 ..................................................................................................15

Electronic Freedom of Information Act Amendments of 1996,
      P.L. 104-231, 110 Stat. 3048 ....................................................22, 23, 24

FOIA Improvement Act of 2016,
      P.L. 114-185, 130 Stat. 538 .......................................................22, 24, 25

Federal Rule of Civil Procedure 12(b)(1) .........................................................3

Federal Rule of Civil Procedure 12(b)(6) .........................................................3

Federal Rule of Civil Procedure 56(a) ..............................................................4

8 C.F.R. § 1003.0(a) ...........................................................................................1

8 C.F.R. § 1003.1(a)(1) .......................................................................................1

8 C.F.R. § 1003.1(b) ...........................................................................................1

8 C.F.R. § 1003.1(d)(7) ...................................................................................2, 15

8 C.F.R. § 1003.1(g) ....................................................................................2, 14, 15

**Miscellaneous**

Black's Law Dictionary (rev. 4th ed. 1968) ....................................................14

H.R. Rep. No. 89-1497 (1966)....................................................................11, 17

H.R. Rep. No. 104-795 (1996)....................................................................23, 24

S. Rep. No. 93-854 (1974) ...............................................................................11

S. Rep. No. 104-272 (1996)........................................................................23, 24

**INTRODUCTION**

Plaintiff New York Legal Assistance Group (NYLAG) filed this lawsuit under the Freedom of Information Act (FOIA) and the Administrative Procedure Act (APA) challenging the failure of defendants Board of Immigration Appeals (BIA), Executive Office for Immigration Review (EOIR), and U.S Department of Justice (DOJ) to make records available for public inspection in an electronic format. NYLAG seeks an order requiring defendants to make unpublished decisions of the BIA publicly available online. The main issue in this case is whether FOIA's mandatory obligation that agencies proactively disclose certain categories of records is judicially enforceable. Under the plain language of FOIA, the court must order such disclosure of the BIA's unpublished decisions. Absent judicial enforcement, defendants will continue disregarding this mandatory disclosure obligation, leaving FOIA requesters with no meaningful remedy for blatant noncompliance with the statute.

**BACKGROUND**

The BIA is "the highest administrative body for interpreting and applying immigration laws."[1] EOIR, *Board of Immigration Appeals* (last updated Oct. 15, 2018), https://www.justice.gov/eoir/board-of-immigration-appeals. The BIA hears appeals from matters adjudicated by immigration judges and district directors of the Department of Homeland Security, including cases involving deportation, removal, and asylum. *See* 8 C.F.R. § 1003.1(b). Every year, the BIA issues thousands of decisions in the cases it adjudicates. From Fiscal Year 1997 through Fiscal Year 2017, the government estimates the BIA issued a total of 752,264 decisions—nearly 36,000 per year. Decl. of Joseph Schaaf ¶ 21 (Doc. 26). The BIA's decisions are binding on the parties unless

---

[1] The BIA is part of EOIR, and both EOIR and the BIA are components of DOJ. 8 C.F.R. §§ 1003.0(a), 1003.1(a)(1).

overturned by the Attorney General or a federal court. 8 C.F.R. § 1003.1(d)(7); 8 U.S.C. § 1252(a)(1). The BIA designates some of its final decisions as binding precedent, *see* 8 C.F.R. § 1003.1(g), and defendants make those decisions available online, *see* EOIR, *Agency Decisions* (last updated Mar. 20, 2019), https://www.justice.gov/eoir/ag-bia-decisions. But such precedential decisions comprise a *de minimis* proportion of the BIA's decisions, typically only 20 to 30 decisions per year. Schaaf Decl. ¶ 17 n.5. The BIA also makes a small percentage of its unpublished decisions available online, *see, e.g.*, EOIR, *Proactive Disclosures* (last updated Nov. 7, 2018), https://www.justice.gov/eoir/proactive-disclosures, and at the EOIR Law Library and Immigration Research Center in Falls Church, Virginia, *see* Decl. of Jodi Ziesemer ¶ 12. The vast majority of unpublished BIA decisions, however, are not publicly available in an electronic format—or any format. Despite their general unavailability, the BIA's unpublished decisions are cited, used, and relied upon by government lawyers,[2] immigration judges,[3] and the BIA itself.[4] *See*

---

[2] *See, e.g.*, *In re Stewart*, 2016 WL 4035746, at *1 (BIA June 30, 2016) (government sought remand from Ninth Circuit to BIA to "determine the effect" of a Supreme Court decision, a Third Circuit decision, and "the Board's decision in an unpublished case" on the respondent's claim); *In re Iqbal*, 2007 WL 2074540, at *3 (BIA June 19, 2007).

[3] *See, e.g.*, *In re Perez-Herrera*, 2018 WL 4611455, at *4, 6 (BIA Aug. 20, 2018); *In re Bayoh*, 2018 WL 4002292, at *1 n.1 (BIA June 29, 2018); *In re Arangure*, 2017 WL 1951527, at *2 (BIA Apr. 7, 2017); *In re Yanez*, 2012 WL 5473648, at *1 (BIA Oct. 18, 2012); *In re Zea-Flores*, 2011 WL 1570463, at *1 (BIA Apr. 6, 2011); *In re Lima*, 2008 WL 4222170, at *1 & n.1 (BIA Aug. 29, 2008); *In re Arieli*, 2006 WL 3203647, at *1 (BIA Aug. 30, 2006); *In re Johnson*, 2005 WL 1766782, at *2 n.2 (BIA May 3, 2005); *In re Garcia-Linares*, 21 I. & N. Dec. 254, 256–57 (BIA 1996).

[4] *See, e.g.*, *In re Razo*, 2017 WL 7660432, at *1 n.1 (BIA Oct. 16, 2017); *In re Cai*, 2015 WL 1208206, at *1 (BIA Feb. 12, 2015); *In re Alvarez Fernandez*, 2014 WL 4966372, at *2 (BIA Sept. 23, 2014) (adopting "similar analysis" of unpublished BIA decision); *Matter of Echeverria*, 25 I. & N. Dec. 512, 519 (BIA 2011) (declining to reach same conclusion as unpublished cases but acknowledging that departure from those decisions requires a "principled reason"); *In re Tolase*, 2010 WL 3355110, at *1 (BIA July 29, 2010); *In re Negrete-Rodriguez*, 2006 WL 2183402, at *2 (BIA June 19, 2006); *In re Morales*, 21 I. & N. Dec. 130, 136 (BIA 1995); *cf. In re Persaud*, 2010 WL 1747399, at *2 (BIA Apr. 15, 2010) (Pauley, Bd. Member, dissenting) (noting that "tendency" by BIA to decide cases "in unpublished orders" consistently will be "cited

*id.* ¶ 8; *In re Martinez*, 2016 WL 8471078, at *1 (BIA Dec. 30, 2016) ("We also find no error in the Immigration Judge's citation of an unpublished Board decision address [sic] the statute at issue as persuasive, but not controlling, authority.").

NYLAG is one of the largest providers of legal services to immigrants in New York City. Ziesemer Decl. ¶ 6. NYLAG provides low-income immigrants with comprehensive legal services, including direct representation in removal defense and asylum. *Id.* ¶ 3. NYLAG also offers immigrant community education, including "know your rights" presentations, immigration trainings, and fraud awareness and prevention programs. *Id.* ¶ 4. On June 8, 2016, NYLAG submitted a FOIA request to the BIA under 5 U.S.C. § 552(a)(2), asking it to make available in its online electronic reading room "[a]ll nonpublished decisions of the BIA (including concurring and dissenting opinions) from November 1, 1996, through the present." Decl. of Danielle Tarantolo Ex. A. On August 8, 2018, EOIR denied NYLAG's request. *Id.* Ex. C. On September 11, 2018, NYLAG submitted an administrative appeal of EOIR's denial of its FOIA request. *Id.* Ex. D. After defendants failed to respond to the administrative appeal, NYLAG initiated this lawsuit. *Id.* ¶ 7.

## LEGAL STANDARD

On a motion under Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject-matter jurisdiction, the Court must determine whether it has the "statutory or constitutional power to adjudicate" the case. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). Where, as here, the dispute is over the scope of a statutory grant of jurisdiction, the issue is purely legal. Under Federal Rule of Civil Procedure 12(b)(6), the court may not dismiss a complaint for failure to state a claim upon which relief can be granted if the complaint "contain[s] sufficient factual

---

by future aliens and courts").

matter, accepted as true, to state a claim to relief that is plausible on its face." *Mastafa*, 770 F.3d at 177 (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Summary judgment is appropriate when "there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all reasonable inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "FOIA cases are generally resolved on motions for summary judgment." *N.Y. Times Co. v. U.S. Secret Serv.*, No. 17 Civ. 1885 (PAC), 2018 WL 722420, at *3 (S.D.N.Y. Feb. 5, 2015). Under FOIA, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). The agency may satisfy its burden by affidavits, but such affidavits must contain more than "conclusory assertions," *N.Y. Times Co.*, 2018 WL 722420, at *3, and must provide "reasonably specific detail" justifying the agency's action that is not "controverted by … contrary evidence in the record." *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018).

## ARGUMENT

FOIA was enacted to help "insure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "Congress intended FOIA to permit access to official information long shielded unnecessarily from public view." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks omitted).

In this case, NYLAG seeks an order requiring the BIA to make its unpublished decisions publicly available online. These decisions not only affect the individuals in the cases in which the decisions are issued; they also constitute a body of law relied upon by both judges and government lawyers in immigration courts. *See supra* nn.2–4. In contrast, advocates for immigrants lack access to the vast majority of these decisions. FOIA, however, contains an express mandate intended to

prevent such situations: "Each agency, in accordance with published rules shall make available for public inspection in an electronic format—(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases." 5 U.S.C. § 552(a)(2)(A).

The government primarily argues that NYLAG cannot enforce this provision and that the only remedy available under FOIA is production of records to NYLAG rather than public posting of records as § 552(a)(2) requires. The government's unduly narrow interpretation of FOIA contradicts the statute's plain language, which provides the remedy NYLAG seeks. And if FOIA did not provide that remedy, NYLAG would have a remedy under the APA, which makes judicially reviewable "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Moreover, there can be no question that the BIA's unpublished decisions are "final opinions" or "orders" within the meaning of FOIA. Finally, the government's unfounded arguments about undue burden and impermissible retroactivity are no more than a *post hoc* excuse for a decades-long failure to comply with a statutory obligation, and neither excuses compliance.

## I.   FOIA's affirmative disclosure provision is enforceable under FOIA.

The clear language of FOIA imposes specific mandates on agencies and broadly empowers courts to remedy violations of those mandates through equitable relief. The government objects to this common-sense reading of the statute's words and puts forward an atextual interpretation of FOIA based on out-of-circuit authority. But the Court need not look beyond the language of the statute and controlling decisions of the Supreme Court and the Second Circuit to resolve this issue.

FOIA provides three principal mechanisms by which agencies "shall make available to the public information." 5 U.S.C. § 552(a). First, agencies must "publish" certain information, including substantive rules, in the Federal Register. *Id.* § 552(a)(1). Second, under the statute's "electronic reading room" provision, agencies must "make available for public inspection and

copying," through "electronic means," other important information not subject to the publication requirement, including "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases." *Id.* § 552(a)(2). Third, "upon any request for records" not already published or publicly available electronically, the agency must make records "promptly available" to the requester unless they are exempt from disclosure. *Id.* § 552(a)(3).

These substantive requirements are backed by an express right of action, § 552(a)(4)(B), allowing a person injured by the withholding of information in violation of FOIA to seek a judicial remedy in federal district court. In such an action, the court has the power both "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* As the Supreme Court held in *Renegotiation Board v. Bannercraft Clothing Co.*, the statute confers broad remedial authority consistent with "the inherent power of an equity court." 415 U.S. 1, 20 (1974). When a plaintiff shows that an agency has "(1) 'improperly'; (2) 'withheld'; (3) 'agency records,'" a district court has "authority to devise remedies and enjoin agencies … under the jurisdictional grant conferred by § 552." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

A straightforward reading of FOIA demonstrates that NYLAG has properly invoked the Court's powers under § 552(a)(4)(B): NYLAG has alleged that defendants are improperly withholding records—unpublished decisions of the BIA—from public access, contrary to § 552(a)(2). And NYLAG seeks an order "enjoin[ing] the agency from withholding [those] agency records" from the public. *Id.* § 552(a)(4)(B); *see* Compl. 9–10 (Doc. 1). That relief falls squarely within the bounds of FOIA's remedial scheme. The government argues that the court only has power to order an agency to turn over records to a specific requester, but nothing in FOIA generally or § 552(a)(4)(B) in particular limits a court's authority in that way. The statute expressly

6

empowers district courts "to enjoin the agency from withholding agency records *and* to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (emphasis added). FOIA's use of the conjunctive "and" in its remedial provision indicates that courts have the power to issue such injunctive relief as distinct from merely compelling production to particular requesters. The authority to "enjoin the agency from withholding agency records," as a matter of plain meaning, includes the ability to enjoin agencies from withholding records from mandated public disclosure in electronic reading rooms.

This conclusion is reinforced by the Supreme Court's decisions in *Renegotiation Board* and *Kissinger*, as well as by decisions from courts in this Circuit emphasizing the sweep of the courts' equitable powers under FOIA. Court after court has recognized plaintiffs' ability to obtain declaratory or injunctive relief far beyond production of records to a specific requester where an agency has a pattern or practice of violating FOIA. *See, e.g.*, *Panjiva, Inc. v. U.S. Customs & Border Protection*, 342 F. Supp. 3d 481, 495–96 (S.D.N.Y. 2018); *see also Pietrangelo v. U.S. Army*, 334 F. App'x 358, 359–60 (2d Cir. 2009) (noting that other courts have recognized "pattern or practice" claims under FOIA but finding it unnecessary to decide whether such claims were available in that case); *cf. Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (recognizing requester can bring "policy or practice" claim under FOIA). FOIA further empowers courts to, among other things, review the adequacy of an agency's search for records responsive to a FOIA request, *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 123–24 (2d Cir. 2014); *Grand. Cent. P'ship v. Cuomo*, 166 F.3d 473, 489–90 (2d Cir. 1999), order an agency to conduct additional searches, *Fox News Network, LLC v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 158, 162 (2d Cir. 2010), and order an agency to grant a FOIA requester a fee waiver, *Carney v. DOJ*, 19 F.3d 807, 814–16 (2d Cir. 1994); *see also Reynolds v. Att'y Gen. of U.S.*, 391 F. App'x 45, 46 (2d

Cir. 2010) (reviewing denial of public interest fee waiver). These Second Circuit cases are fundamentally inconsistent with the government's view that courts can only order production of documents to a requester. Courts have not treated such broader remedies as extraordinary, but as well within the bounds of their broad equitable powers under FOIA.

Even so, the government urges this Court to adopt the D.C. Circuit's holding in *Citizens for Responsibility & Ethics in Washington v. DOJ* (*CREW*), 846 F.3d 1235 (D.C. Cir. 2017), that courts lack authority under FOIA to issue injunctions requiring compliance with § 552(a)(2) and may only order production of records to individual requesters. Defs. Mem. 8–11. *CREW*'s holding, however, is not binding on this Court and runs contrary to FOIA's language and purpose.

*CREW*, like this case, was an action seeking to compel an agency to comply with its obligations to make records available for public access under § 552(a)(2). Although the plaintiff invoked the APA as the source for its right of action, the D.C. Circuit began by considering whether the relief sought was available under FOIA. Acknowledging the Supreme Court's decisions concerning the breadth of injunctive relief under FOIA, the court held that the statutory right of action encompasses claims for prospective injunctive relief to enforce § 552(a)(2) and that such injunctions may impose an ongoing, "affirmative duty to disclose" records covered by § 552(a)(2). 846 F.3d at 1241–42.

Nonetheless, after recognizing plaintiffs can enforce § 552(a)(2)'s proactive disclosure requirement, *CREW* rendered that recognition meaningless by imposing a limit on the courts' remedial authority under § 552(a)(4)(B) that prevents them from, in fact, ordering compliance with § 552(a)(2)'s proactive disclosure requirement. Instead, *CREW* held, a court may address a violation of § 552(a)(2) by "requir[ing] disclosure of documents only to [the plaintiff], not disclosure to the public." 846 F.3d at 1244. *CREW* held that this "mismatch" between the violation

8

and the relief available for it, *id.* at 1246, was required by a prior D.C. Circuit decision, *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191 (D.C. Cir. 1996), which held that a court in a FOIA action cannot order publication in the Federal Register of records required to be published there under § 552(a)(1). *CREW* acknowledged that *Kennecott* did not discuss the scope of the statutory language broadly authorizing injunctions against withholding of records, but concluded that *Kennecott* "implicitly" considered that language and limited the "scope of section 552(a)(4)(B) as a whole" to remedies solely for the plaintiff. 846 F.3d at 1244. Thus, *CREW* concluded that its hands were tied by circuit precedent, compelling it to reach the paradoxical conclusions that § 552(a)(4)(B) authorizes injunctive relief aimed at violations of § 552(a)(2)'s proactive disclosure requirement but that such relief may not direct compliance with that requirement. *See id.* The court made no attempt to square that holding with the statutory language authorizing injunctive relief against any withholding of records. Unlike the panel in *CREW*, this Court is not bound by precedent requiring an illogical "mismatch" between the statutory obligation under § 552(a)(2) and the remedies available under § 554(a)(4)(B).

Beyond reciting the D.C. Circuit's decisions in *CREW* and *Kennecott*, the government offers little support for its position. First, the government implies that FOIA's command that a final order or opinion "may be relied on, used, or cited as precedent by an agency against a party other than an agency only if" the opinion or order has been made available under § 552(a)(2) or "the party has actual and timely notice of the terms thereof," 5 U.S.C. § 552(a)(2)(E)(i)–(ii), provides sufficient protection to the public against denial of access to records under § 552(a)(2). *See* Defs. Mem. 10. But, as explained above, the BIA and immigration judges rely on, use, and cite unpublished BIA decisions as legal authority. *See supra* nn.2–4; Ziesemer Decl. ¶ 8. Critically, even apart from this unequal access, the violation of the proactive disclosure requirement prevents

immigrants from accessing favorable final opinions or orders that could be dispositive in obtaining relief. *See* Ziesemer Decl. ¶¶ 9–11, Ex. A. And in any event, this provision does nothing to fulfill FOIA's purpose of making agency records available to the public.

Second, the government contends this Court cannot "order general compliance with the statute." Defs. Mem. 11 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004)). NYLAG is not seeking "general compliance" with a statute, however. NYLAG has submitted a FOIA request to defendants requesting that they make all unpublished BIA decisions since November 1, 1996, publicly available in an electronic format, Compl. ¶ 25, based on defendants' clear statutory obligation to make "final opinions" and "orders" publicly available in an electronic format, 5 U.S.C. § 552(a)(2)(A). To remedy this violation, NYLAG seeks an order from this court enjoining defendants from withholding these decisions. Compl. 9–10. Rather than seeking a "general order" mandating statutory compliance with a statute that grants agencies "a great deal of discretion in deciding how to achieve" a particular object, as in *Norton*, 542 U.S. at 66, NYLAG seeks compliance with a specific statutory requirement through an express right of action tailored to providing exactly that relief.

For all these reasons, this Court should hold that it has the power to enforce § 552(a)(2) and reject the atextual interpretation of FOIA urged by the government.

## II.    Alternatively, FOIA's affirmative disclosure provision is enforceable under the APA.

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. NYLAG's APA claim is an alternative to its FOIA claim: If the Court concludes the relief sought by NYLAG is available under FOIA, *see supra* Part I, NYLAG's APA claim is unnecessary. But if the Court were to agree with the government that the only relief available under FOIA is production of the records to an individual requester, such

relief would not be an "adequate remedy" for violation of § 552(a)(2), and the APA would thus provide a right of action to enforce § 552(a)(2)'s affirmative disclosure obligations. The Court should reject the government's tortured view that § 552(a)(2)'s mandate is unenforceable under FOIA and, yet, FOIA offers an "adequate remedy" for violations of § 552(a)(2).

As the Second Circuit has explained, "determining whether a suit can be brought under the APA … 'begin[s] with the strong presumption that Congress intends judicial review of administrative action.'" *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008) (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)). Thus, the Second Circuit has narrowly defined an "adequate remedy" as one that "offers the same relief" sought under the APA. *N.Y. City Emps.' Ret. Sys. v. SEC* (*NYCERS*), 45 F.3d 7, 14 (2d Cir. 1995).

Ordering production of records to an individual requester—the only relief that the government says is available for a violation of FOIA's proactive disclosure requirement—is not the "same relief," *NYCERS*, 45 F.3d at 14, as ordering public posting online. Section 552(a)(2) "sets out the affirmative obligation of each agency" "to make information available to the public, with certain information … required to be made available for public inspection and copying." S. Rep. No. 93-854 (1974), *reprinted in* Subcomm. on Gov't Info. & Individual Rights of the House Comm. on Gov't Operations *et al.*, Freedom of Info. Act Source Book 157 (Joint Comm. Print 1975). Agencies must make publicly available without any request their "final opinions," "orders," "statements of policy," "interpretations," "administrative staff manuals" and "instructions to staff," 5 U.S.C. § 552(a)(2), because this "material is the end product of Federal administration." H.R. Rep. No. 89-1497, at 7 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2424. In other words, Congress identified specific categories of records as so vital to the public's right "to know what their Government is up to," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004)

(internal quotation marks omitted), that agencies must proactively disclose them. Concluding that production of records to an individual requester is an "adequate remedy" for § 552(a)(2) violations would neuter this statutory mandate. Agencies could, at their option, decline to disclose proactively *any* § 552(a)(2) records and make them available only "upon request" under § 552(a)(3).

The facts here starkly demonstrate why production of unpublished BIA decisions to NYLAG would not be an adequate remedy. The records at issue comprise approximately 752,264 opinions totaling at least 1,365,988 pages. *See* Schaaf Decl. ¶¶ 17, 25, 27. For NYLAG to make these records public—to "disseminate them, and thereby, remedy [NYLAG's] injury," as the government indifferently states, Defs. Mem. 11—would require a significant expenditure of resources that NYLAG does not have. Ziesemer Decl. ¶¶ 18–20. Requiring a non-profit legal aid organization to function as an agency's electronic reading room cannot be an "adequate remedy." Moreover, enforcement of the statutory proactive disclosure requirement would provide NYLAG and other members of the public access on an ongoing basis, without the need for repeated FOIA requests and the lengthy delays of agency FOIA processing.

The majority of cases cited by the government on this point concern APA claims that would provide the same relief that is undisputedly available under FOIA: production of records to the individual requester. *See Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012); *Cent. Platte Nat. Res. Dist. v. USDA*, 643 F.3d 1142, 1148–49 (8th Cir. 2011); *Walsh v. U.S. Dep't of Veteran Affairs¸* 400 F.3d 535, 538 (7th Cir. 2005); *Panjiva*, 342 F. Supp. 3d at 495. Such cases are inapplicable, however, if the relief requested here is not available under FOIA, as the government argues. *See supra* Part I.

The D.C. Circuit's contrary conclusion in *CREW*, on which the government principally relies, Defs. Mem. 13, is incorrect. *CREW* began by looking for "evidence of legislative intent to

create a special, alternative remedy and thereby bar APA review." 846 F.3d at 1244 (internal quotation marks omitted). To evince such intent, the D.C. Circuit relied on "markers," including whether "an independent cause of action" and "*de novo* review" of agency action exists. *Id.* at 1245. Finding those in FOIA and confusingly concluding that a plaintiff could "enforce the reading-room provision" under FOIA through a suit for production of records to the plaintiff alone, *CREW* held FOIA provided an adequate remedy for violations of § 552(a)(2). *Id.* But, as explained above, production of records to an individual does not "enforce the reading-room provision"; rather, it eviscerates that provision by eliminating the mandatory nature of its requirements.

In addition, contrary to the Second Circuit's requirement that an adequate remedy offer the "same relief" available under the APA, *CREW* limited its comparison to the general *form* of relief, (injunctive relief vs. damages), rather than the specific *substance* of relief available under the statute (production of records vs. public posting of records). *Id.* at 1245. Thus, the D.C. Circuit failed to appreciate that there is in fact a "yawning gap," *id.* at 1246, between mandating disclosure only to a particular recipient, which perpetuates the statutory violation, and directing an agency to proactively make records available, which fulfills the statute's plain mandate.

### III.    The BIA's unpublished decisions are subject to § 552(a)(2).

NYLAG seeks public posting of unpublished BIA decisions because § 552(a)(2)'s mandate applies to "final opinions" and "orders" "made in the adjudication of cases." The government disputes only that the BIA's unpublished decision are "final opinions," Defs. Mem. 13, but its argument that "final opinions" means only "precedential opinions" contradicts the statute's plain meaning, Supreme Court and Second Circuit precedent, and the animating principles of FOIA. The government also wholly ignores that unpublished BIA decisions are also "orders." Further, the government disregards the reality of the current regime: Immigrants and their advocates

generally lack access to a body of law that is cited, used, and relied upon by government attorneys and judges, crippling one of FOIA's core purposes.

"Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009) (quotation marks and alterations omitted). The Supreme Court has made clear that "words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (internal quotation marks and ellipses omitted). BIA decisions, published or unpublished, and precedential or not, are straightforwardly "final opinions" or "orders "made in the adjudication of cases," 552(a)(2)(A). They are "opinions," in that they are the agency's "statement[s] … expounding the law as applied to the case[s], and detailing the reasons upon which the [decisions] [are] based." Black's Law Dictionary (rev. 4th ed. 1968); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 159 (1975) (concluding that a document "explain[ing] the reasons for the final disposition" of a matter is an "opinion"). They are "orders" in that they are "the whole or a part of a final disposition, whether affirmative (or) negative … of an agency in a matter." 5 U.S.C. § 551(6). And they are issued in the "adjudication" of cases, that is, in the course of an "agency process for the formulation of an order." *Id.* § 551(7). Lastly, they are "final," in that they are binding on the parties and on immigration judges or inferior officers. *See* 8 C.F.R. § 1003.1(g) (Except as modified or overruled, "decisions of the Board … shall be binding on all officers and employees of the Department of Homeland Security or immigration judgments"). None of the key statutory terms' "ordinary meaning" includes a requirement that an opinion or order be binding in future cases. Indeed, the statutory provision explicitly states that "final opinions" "include[es] concurring and dissenting opinions," so "final" opinions cannot mean only precedential ones. 5 U.S.C. § 552(a)(2)(A).

The BIA's own regulations and administrative guidance recognize that "final" does *not* mean "precedential." Although the regulations speak generally of the "finality" and "binding" nature of all BIA decisions, *see* 8 C.F.R. §§ 1003.1(d)(7), 1003.1(g), they designate only a subset of these "final" and "binding" decisions as precedential, *id.* § 1003.1(g) (stating "selected decisions of the Board … may be designated to serve as precedents"). Likewise, that a decision may be "subject to review" by a higher authority, *see* Defs. Mem. 14, does not render it non-final. *See* 28 U.S.C. § 1291 (authorizing appeals of "final decisions of district courts"). In fact, a petition for judicial review is only proper where it challenges a "final order of removal," 8 U.S.C. § 1252(b)(1), confirming that BIA decisions subject to such review are "final."[5]

The government's argument is also squarely foreclosed by both Supreme Court and Second Circuit precedent. In *Mehta v. INS*, the Second Circuit concluded that BIA opinions are subject to § 552(a)(2)(A). 574 F.2d 701, 705 (2d Cir. 1978). There, an immigrant challenged the BIA's reliance on a decision because it had not been published in the Federal Register under § 552(a)(1)(D). *Id.* The Second Circuit disagreed, explaining that FOIA "makes clear that adjudicative opinions, such as those of the Board, need only be made available to the public [under § 552(a)(2)(A)] and need not be published in the Federal Register." *Id.* Although the BIA decision at issue was precedential, the Second Circuit did not limit its conclusion to "published" or "binding" or "precedential" decisions but, instead, generally referred to the BIA's "adjudicative opinions," of which the vast majority are unpublished. Additionally, in *NLRB v. Sears, Roebuck*

---

[5] To the extent defendants argue BIA decisions overturned by the Attorney General on discretionary review are not "final opinions," this would exclude a *de minimis* number of opinions. Review of the BIA's published decisions, which appear to include all Attorney General decisions, reveal that the Attorney General has issued approximately 39 decisions *total* during the relevant time period. *See* EOIR, *Agency Decisions* (AG/BIA Decisions Listing Volumes 21–27) (last updated Mar. 20, 2019), https://www.justice.gov/eoir/ag-bia-decisions.

& *Co.*, the Supreme Court held that certain of the NLRB's "Advice Memoranda" and "Appeals Memoranda"—documents falling far short of published decisions—were "final opinions" under § 552(a)(2)(A). 421 U.S. at 136–37. The memoranda concerned the NLRB General Counsel's "decisions not to file a complaint" with the NLRB in particular cases. *Id.* at 155. Because such a decision ends a matter, the Court held that a memorandum "explain[ing] the reasons for the 'final disposition,' … plainly qualifies as an 'opinion' … and falls within 5 U.S.C. § 552(a)(2)(A)." *Id.* at 158–59. Both *Sears* and *Mehta* demonstrate that, whether published or not, a BIA decision is a "final opinion" under § 552(a)(2)(A) because it is a written explanation of the BIA's reasoning in reaching a final disposition of a particular case.

The government's authorities do not hold that such decisions must be "precedential" to be "final." *See* Defs. Mem. at 15. Two of the cases do not even address the provision of FOIA that is at issue in this case. *See Smith v. National Transportation Safety Board*, 981 F.2d 1326, 1328 (D.C. Cir. 1993) (addressing whether records "affect[ed] a member of the public" so as to be subject to disclosure under § 502(a)(2)(C) as "administrative staff manuals and instructions to staff that affect a member of the public"); *Vietnam Veterans of Am. v. Dep't of Navy*, 876 F.2d 164, 164–65 (D.C. Cir. 1989) (holding legal opinions on issues over which official had no authority to act were not "statements of policy or interpretations adopted by the [agencies]" and therefore not subject to publication under § 552(a)(1) or proactive disclosure under § 552(a)(2)). The third, *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441 (D.D.C. 2014), is an out-of-circuit district court opinion that is clearly distinguishable. The responses to inmates' complaints that the requester sought there were issued in a "non-adversarial" process for "every-day prisoner requests and grievances"; they were neither part of an "adjudication" nor constituted the working law of the agency. *Id.* at 456–57. The court considered the responses' lack of precedential significance only to conclude that the

agency did not "in fact rel[y] on these responses, intend[] them to become agency policy, or indeed ever look[] at them again after their issuance." *Id.* at 456–57.

In any event, the experience of NYLAG and other immigration advocates demonstrates that unpublished BIA decisions have "the force and effect of law" and, thus, that publication is required by § 552(a)(2). Although unpublished decisions are not formally binding, parties can, and do, cite them regularly, as the BIA's Practice Manual explicitly acknowledges. *See* EOIR, BIA Practice Manual 9 (last revised Oct. 9, 2018), https://www.justice.gov/eoir/ page/file/1103051/download ("Should a party in an unrelated matter nonetheless wish to refer to an unpublished Board decision, a copy of that decision should be attached to the party's brief, motion, or other submission."). When, by happenstance, NYLAG is able to obtain unpublished decisions that supply persuasive reasoning in its clients' favor, its attorneys cite those opinions and may obtain favorable outcomes as a result. Ziesemer Decl. ¶¶ 10–11. DHS attorneys also cite such opinions. *See supra* n.2. Above all, immigration judges and the BIA rely on these decisions. *See supra* nn.3 & 4; Ziesemer Decl. ¶¶ 8–11. They are, legally and practically, the "working law" of the BIA, "embodied in thousands of orders [and] opinions." H.R. Rep. No. 89-1497, *reprinted in* 1966 U.S.C.C.A.N. at 2424.

## IV.   Compliance with FOIA's affirmative disclosure mandate is not unduly burdensome.

The government argues that it need not comply with FOIA's proactive disclosure mandate because doing so would be "unreasonably burdensome." Defs. Mem. 16–19. But for thousands of unpublished decisions already reviewed for public disclosure, there would be no burden in complying with NYLAG's request. Moreover, the government cannot rely on any undue burden entailed in reviewing *previous* unpublished decisions to evade its obligation to comply with public posting of *future* decisions. The government also relies solely on case law concerning requests for

17

records under § 552(a)(3), which present substantially different circumstances than a request under § 552(a)(2). Finally, the government's cases deal with an "unreasonably burdensome *search*" for responsive records, *e.g.*, *Ruotolo v. DOJ, Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995) (emphasis added), whereas the government's focus here is on the time necessary "review and redact" already located records, Defs. Mem. 18.

A.      As an initial matter, the government could publicly post tens of thousands of decisions online with virtually no burden. First, the government already makes some—although far from all—unpublished decisions available at a physical reading room in Falls Church, Virginia. Posting those decisions online would require no additional review. Second, in response to NYLAG's FOIA request, EOIR responded that it had already "beg[un] a project of redacting and releasing unpublished BIA decisions starting in January 2016" and had completed the project for all unpublished decisions "from October 2015 to December 2016." Tarantolo Decl. Ex. B. Additionally, as of July 13, 2018, the government had begun "redacting 2017 [unpublished BIA] decisions." *Id.* Complying with § 552(a)(2) as to decisions EOIR has already reviewed and redacted for public release would impose no burden on the agency. NYLAG has further requested that the Court order the government to publicly post online "all future unpublished decisions of the BIA." Compl. 10. The time and effort necessary to publicly post prior decisions cannot lessen the government's obligation to comply with § 552(a)(2) moving forward.

B.      Whatever role "undue burden" analysis may have in determining the adequacy of an agency's response to requests under § 552(a)(3), it is inapplicable to an agency's mandatory obligation to post records publicly under § 552(a)(2). Congress already drew the balance when it delineated specific categories of records subject to the mandates of § 552(a)(1) and § 552(a)(2). By contrast, § 552(a)(3) applies to *all* other records that an agency has created or obtained and that

are under its control. *DOJ v. Tax Analysts*, 492 U.S. 136, 144–45 (1989). Section 552(a)(3) thus covers a vast universe of records that need only be disclosed in response to a request. And "[b]ecause 'FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters,'" *Taggart v. Office of the Inspector Gen.*, No. 10 Civ. 5447 (PGG), 2011 WL 13128214, at *8 (S.D.N.Y. Sept. 22, 2011) (citation omitted), courts have concluded that "there are limits to the lengths to which an agency must go in responding to a FOIA request" under § 552(a)(3), *Schrecker v. DOJ*, 349 F.3d 657, 664 (D.C. Cir. 2003).

Here, however, NYLAG seeks only to compel defendants to comply with the statutory requirement that they make unpublished BIA decisions publicly available online. Any "burden" on defendants results not from NYLAG's request but from Congress's mandate that these records be publicly available and defendants' decades-long failure to comply with that mandate. The government's argument posits that the *more* often an agency violates the law, the *less* likely it is that a court may require it to remedy its unlawful actions because the resources necessary to remedy years of noncompliance would be an "undue burden."

As the Supreme Court has recognized, FOIA marked a sea change in public availability of government records. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 16 (2001) ("In FOIA, after all, a new conception of Government conduct was enacted into law, 'a general philosophy of full agency disclosure.'" (quoting *Tax Analysts*, 492 U.S. at 142)). Congress sought to eliminate the "unbridled discretion" FOIA's predecessor gave federal agencies to withhold records by "closing the loopholes which allow[ed] agencies to deny legitimate information to the public." *Tax Analysts*, 492 at 151 (quoting *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 385 (1980)). Moreover, Congress determined that some agency records are so vital to the public's understanding of the federal government that it mandated their

proactive disclosure. Congress cannot have intended to allow an agency to grant itself an "undue burden" exemption from § 552(a)(2) by declining to comply with the law for decades.

C.      Many of the cases relied upon by the government concern whether responding to a FOIA request would "require[] an unreasonably burdensome search." Defs. Mem. 16 (quoting *Am. Fed'n of Gov't Emps. v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990)); *see Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999) ("[A]n agency need not conduct a search that plainly is unduly burdensome."); *Ruotolo*, 53 F.3d at 9 ("We have no doubt that there is such a thing as a request that calls for an unreasonably burdensome search.").[6] But for the vast majority of records at issue—the approximately 83 percent of unpublished BIA decisions in the eDecisions database—there is no possibility of an "unreasonably burdensome search": The government has already searched for and identified them. *See* Schaaf Decl. ¶ 21. As for the remaining records, the government has provided only a general description of the process required to locate them without providing any estimate of the burden on the government of conducting the search. *See id*. ¶ 28. Its statement lacks the "*reasonable specificity* of detail" required to grant the agency summary judgment, *Grand Cent. P'ship*, 166 F.3d at 478, as it fails to provide sufficient information for NYLAG "to contest, and the district court an adequate foundation to review," the claimed undue burden, *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 606 (S.D.N.Y. 2018).

Cases cited by the government that mention the cost of, or time required for, reviewing or redacting records are inapplicable for two reasons. First, several concern whether nonexempt

---

[6] *See also Conti v. DHS*, No. 12 Civ. 5827(AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014); *Trentadue v. FBI*, 572 F.3d 794, 797 (10th Cir. 2009); *Schrecker*, 349 F.3d at 663–64; *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891–92 (D.C. Cir. 1995); *Judicial Watch, Inc. v. IRS*, No. 13-1759 (EGS), 2015 WL 4072431, at *7 (D.D.C. July 3, 2015); *Int'l Counsel Bureau v. U.S. Dep't of Def.*, 723 F. Supp. 2d 54, 59 (D.D.C. 2010); *Wolf v. CIA*, 569 F. Supp. 2d 1, 8–9 (D.D.C. 2008); *People for the Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 12–13 (D.D.C. 2006).

information contained in the records is "reasonably segregable" from exempt material under 5 U.S.C. § 552(b). *See Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 86–88 (2d Cir. 1979); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998); *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014). The question in such cases is whether nonexempt information is so "inextricably intertwined" with exempt information that disclosure would either "compromise" exempt information or result in documents with "little informational value." *ACLU v. DOJ*, 252 F. Supp. 3d 217, 227 (S.D.N.Y. 2017). The government has not argued that non-exempt information in the records is not "reasonably segregable" from exempt information—nor could it given that the BIA regularly produces redacted opinions that still have significant informational value. Second, the remaining cases mention the burden of reviewing records only while also concluding that the *search* for the records would be unduly burdensome. *See Am. Fed'n of Gov't Emps.*, 907 F.2d at 209; *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. DHS*, 8 F. Supp. 3d 188, 202–03 (D. Conn. 2014); *Hainey v. Dep't of Interior*, 925 F. Supp. 2d 34, 44–45 (D.D.C. 2013); *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 290–91 (D. Conn. 2012). None of the cases stands for the proposition that, where a non-burdensome search can be conducted and records can be easily identified, an agency nonetheless can refuse to process them on the basis of an "undue burden."

As to any burden on the government that reviewing and redacting the records might entail, the government declarant's assertion that *all* of the records would require "line-by-line" review for the removal of personally identifying and other sensitive information, Schaaf Decl. ¶ 24, is contradicted by available unpublished BIA decisions and NYLAG's declarant. Review of "selected" unpublished decisions available on Westlaw and the handful of unpublished decisions available on DOJ's website indicates that only one piece of information is usually redacted—the

respondent's Alien Registration Number (A-Number)—and only one other piece of information is redacted with some frequency—some or all of the respondent's name. *See supra* nn.2–4; *In re* [Name Redacted] (BIA Jan. 3, 2018), https://www.justice.gov/eoir/page/file/1051196/download; *In re L–A–B–R–* (BIA Nov. 20, 2017), https://www.justice.gov/eoir/page/file/1050451/download; Ziesemer Decl. ¶¶ 13–17. Redaction of an A-Number and potentially a name would not involve an arduous process, and the brief time needed for such light redaction calls into serious question the government's "best-case scenario," under which reviewing 1,250 pages would require 40 hours, or about one page every two minutes. Although *some* cases require more careful review and additional redactions, such as some cases involving the Violence Against Women Act or applications for asylum, *see* Schaaf Decl. ¶ 24, the government has not provided any indication of what proportion of the unpublished decisions consist of these unique scenarios.

Accordingly, even if an undue burden test were appropriate here, the government has not met its burden of showing that an undue burden would result and cannot decline to process the records for online release on this basis.

## V.   FOIA requires defendants to publicly post in an electronic format all unpublished BIA decisions issued since November 1, 1996.

The government contends that FOIA requires that it publicly post online only final opinions and orders issued on or after June 30, 2016—the effective date of the FOIA Improvement Act of 2016 (2016 Act), P.L. 114-185, 130 Stat. 538. Defs. Mem. 19. The government's position misunderstands the source of its statutory obligation to publicly post online records—the Electronic Freedom of Information Act (E-FOIA) Amendments of 1996, P.L. 104-231, 110 Stat. 3048. The relevant requirements of the E-FOIA Amendments, as well as those of the 2016 Act, unambiguously apply to the records at issue here and foreclose the government's effort to limit the scope of NYLAG's relief to unpublished decisions issued on or after June 30, 2016.

A.      Contrary to the government's assertion, the 2016 Act's amendment to § 552(a)(2) did not "fundamentally change[] agencies affirmative obligations under FOIA." Defs. Mem. 21. Prior to 1996, § 552(a)(2) required only that agencies make specified categories of records "available for public inspection and copying." 5 U.S.C. § 552(a)(2) (1995). Accordingly, agencies had "reading rooms" where such materials were available in hard copy to the public. In 1996, Congress enacted the E-FOIA Amendments, which, among other things, amended § 552(a)(2) to require that "[f]or records created on or after November 1, 1996, within one year after such date, each agency shall make such records [subject to § 552(a)(2)] available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means." P.L. 104-231 § 4, 110 Stat. 3048, 3048 (codified as amended at 5 U.S.C. § 552(a)(2)). As the Senate Report accompanying the E-FOIA Amendments explained, "[t]he term 'computer telecommunications' is meant to be synonymous with on-line access." S. Rep. No. 104-272, at 10 (1996); *see* H.R. Rep. No. 104-795, at 20–21 (1996) (equating "computer telecommunications" with availability "on-line"). To address concerns about the time needed to comply, application of this requirement was limited to records created on or after November 1, 1996—about one month after the law's enactment—and the Act provided for a one-year delay of implementation "to allow agencies time to arrange compliance." S. Rep. No. 104-272, at 11. Thus, the "fundamental change" with respect to electronic records occurred in 1996—not 2016.

The language of the E-FOIA Amendments does not "permit[] an agency some discretion about the manner in which to handle records subject to the provision." Defs. Mem. 21. Instead, the E-FOIA Amendments *require* that they be made available "by computer telecommunications" (that is, online), if "computer telecommunications" have been "established by the agency" (that is, if the agency has a website). The E-FOIA Amendments permit an agency to make records available

23

"by other electronic means" only if the agency has not "established" "computer telecommunications." P.L. 104-231 § 4, 110 Stat. at 3048. In other words, once an agency has "established" a website—or, at least, an online reading room—this statutory provision *requires* that records created on or after November 1, 1996, be made available online. The government does not dispute that these agencies have "established" "computer telecommunications" within the meaning of this provision. *See, e.g.*, EOIR, *Freedom of Information Act* (last updated Aug. 24, 2017), https://www.justice.gov/eoir/foia-library. Accordingly, the statutory requirement of public, online posting of § 552(a)(2) records unambiguously applies to records created on or after November 1, 1996, and has been effective since November 1, 1997.

The 2016 Act's amendment of § 552(a)(2) to include "in an electronic format" is thus a reaffirmation of agencies' preexisting obligation to make records available online.[7] Indeed, this change was apparently so insignificant in DOJ's view that it did not even warrant a mention in DOJ's detailed summary of the 2016 Act's new requirements. *See* DOJ, *OIP Summary of the FOIA Improvement Act of 2016* (last updated Aug. 17, 2016), https://www.justice.gov/oip/oip-summary-foia-improvement-act-2016. Accordingly, whether or not the 2016 Act is retroactive, § 552(a)(2) requires online posting of all unpublished BIA decisions since November 1, 1996.

**B.**     In any event, the 2016 Act—including its requirement that records subject to § 552(a)(2) be made "available for public inspection in an electronic format"—applies fully to

---

[7] This change may reflect a different aim altogether—elimination of the need to maintain paper copies of records. The 2016 Act amended the phrase "public inspection and copying" to "public inspection in an electronic format" in reference to both the records subject to § 552(a)(2) and the required index of such records. *See* P.L. 104-231 § 2, 110 Stat. at 3048. Under the E-FOIA Amendments, Congress was clear that the new requirements meant such records must be made available electronically *and* hard copy. S. Rep. No. 104-272, at 11; H.R. Rep. No. 104-795, at 20. With the increased reliance on electronic storage and communications, and the reality that many government records now exist only in electronic form, it is no surprise that Congress might seek to alleviate the burden on agencies to maintain paper copies of these records.

NYLAG's request. In determining whether a statute has retroactive effect, a court first looks to "whether Congress has expressly prescribed the statute's proper reach." *Republic of Austria v. Altmann*, 541 U.S. 677, 693–94 (2004) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). If it has, no further analysis is necessary. *Id.* The 2016 Act explicitly states that its "shall take effect on the date of enactment of this Act and shall apply to any request for records under [FOIA] made after the date of enactment of this Act." FOIA Improvement Act of 2016, P.L. 114-185 § 6, 130 Stat. at 544–45). Again, the 2016 Act requires agencies to make the § 552(a)(2) records "available for public inspection in an electronic format." *Id.*, P.L. 114-185 § 2, 130 Stat. at 538 (codified at 5 U.S.C. § 552(a)(2)). Because the records requested here are subject to § 552(a)(2), the plain language of the statute requires them to have been made "available for public inspection in an electronic format" as of June 30, 2016. In addition, NYLAG's request was submitted to defendants on June 8, 2018—"after the date of enactment of [the 2016 Act]." *Id.*, P.L. 114-185 § 6, 130 Stat. at 545. The language of the 2016 Act, like the language of the 1996 Act, unambiguously resolves the issue in NYLAG's favor.

## CONCLUSION

For these reasons, the Court should grant NYLAG's motion for summary judgment and deny the government's combined motion to dismiss and motion for summary judgment.

Dated: March 29, 2019                    Respectfully submitted


                                         /s/ Patrick D. Llewellyn
                                         **PATRICK D. LLEWELLYN***
                                         Public Citizen Litigation Group
                                         1600 20th Street NW
                                         Washington, DC 20009
                                         (202) 588-7727
                                                  *Admitted pro hac vice

                                         **BETH E. GOLDMAN, ESQ.**

25

New York Legal Assistance Group
7 Hanover Square, 18th Floor
New York, New York 10004
(212) 613-5000

**DANIELLE TARANTOLO**, of Counsel
**JANE GREENGOLD STEVENS,** of Counsel

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on March 29, 2019, I filed the foregoing through the Court's CM/ECF system,

which causes a copy to be served on counsel for the defendants below by ECF and electronic mail:

> Arastu K. Chaudhury
> Assistant United States Attorney
> 86 Chambers Street
> New York, New York 10007
> Arastu.chaudhury@usdoj.gov

<u>/s/ Patrick D. Llewellyn</u>
Patrick D. Llewellyn

27