# EXHIBIT D



September 10, 2018

VIA FOIAonline

Director, Office of Information Policy (OIP)
United States Department of Justice
Suite 11050
1425 New York Avenue NW
Washington, DC 20530-0001

**RE:   Freedom of Information Act Request**

Dear FOIA Appeal Officer:

On behalf of the New York Legal Assistance Group (NYLAG) and pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I appeal in full the Executive Office of Immigration Review's (EOIR) denial of NYLAG's FOIA request 2018-35171.

On June 8, 2012, NYLAG submitted a FOIA request to the Board of Immigration Appeals (BIA) under 5 U.S.C. § 552(a)(2), requesting that the BIA make publicly available in its online electronic reading room:

> All nonpublished decisions of the BIA (including concurring and dissenting opinions) from November 1, 1996, through the present.

*See* Exhibit 1 (FOIA Request). NYLAG further requested that BIA make all future nonpublished decisions (including concurring and dissenting opinions) publicly available in its online electronic reading room.

On July 13, EOIR emailed NYLAG, stating that NYLAG's request was overbroad and did not allow the agency to "perform a 'reasonable search' under FOIA." The agency further stated that it had already undertaken a project of reviewing and releasing (apparently to FOIA requesters but not to the general public electronically) unpublished BIA decisions starting in January 2016, and that all unpublished decisions from October 2015 to December 2016 had been reviewed and prepared for release. The agency also noted that it had begun working on 2017 unpublished decisions. The agency offered to "expeditiously" provide NYLAG with copies of all of the already reviewed unpublished decisions for 2015–2017 and to provide additional future unpublished decisions "as they are redacted," if NYLAG would agree to so narrow its request.

On July 17, NYLAG responded to EOIR's email, stating that NYLAG was not willing to narrow its request and reiterating that NYLAG had requested electronic public posting of these records under § 552(a)(2), not production of the records to NYLAG alone under § 552(a)(3).

NYLAG further made clear that a decision about whether to grant its request need not be delayed pending review of all the opinions that must ultimately be posted electronically, and that NYLAG was willing "to work with the agency to establish a reasonable timeline for the electronic posting of the [unpublished BIA] decisions." Moreover, because EOIR acknowledged that all unpublished decisions from October 2015 through December 2016—as well as many 2017 decisions—already had been reviewed and were ready for release, NYLAG noted these decisions should be posted without delay.

By letter dated August 8—and received by NYLAG on August 13—EOIR denied NYLAG's FOIA request. *See* Exhibit 2 (EOIR FOIA Denial). First, EOIR claimed the BIA decisions are not "final opinions" or "orders" within the meaning of § 552(a)(2) because "there are no published rules defining" them as such. Second, EOIR contended that the only remedy available for members of the public seeking records that had not been published under § 552(a)(2) was to request the records under § 552(a)(3), relying on *Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017). Third, EOIR again stated that NYLAG's request is "overbroad" and requested that NYLAG narrow its request. EOIR concluded by informing NYLAG of its appeal rights.

NYLAG appeals the denial in full, as explained in more detail below.

## I. BIA Decisions, Including Unpublished Decisions, Are Final Opinions and Orders Under § 552(a)(2).

Under 5 U.S.C. § 552(a)(2), "[e]ach agency, in accordance with published rules, shall make available for public inspection in an electronic format … final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases." Under the Administrative Procedure Act (APA), of which FOIA is a part, "adjudication" is defined as an "agency process for the formulation of an order," and an "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form of an agency in a matter other than rule making." 5 U.S.C. § 551(6)–(7). A document that "explains the reasons for the final disposition" of an adjudication is an "opinion." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 159 (1975). The BIA has jurisdiction to hear appeals from matters adjudicated by immigration judges and by district directors of the Department of Homeland Security in proceedings where one party is a noncitizen, a citizen, or a business entity, and the other party is the United States government. 8 C.F.R. § 1003.1(b). Further, the BIA's decisions are binding on the parties in the dispute, unless overturned by the Attorney General or a federal court. 8 C.F.R. § 1003.1(d)(7); 8 U.S.C. § 1252(a)(1). Accordingly, under the plain terms of FOIA, the BIA's decisions are "final opinions" and "orders" subject to public posting under (a)(2).

EOIR's only apparent ground for denying that BIA decisions are subject to (a)(2) is the assertion that the phrase "in accordance with published rules" means that the agency is required by (a)(2) to publicly post records in an electronic format only if the records are separately defined as opinions and orders by regulation. That interpretation is untenable for three reasons.

First, under EOIR's interpretation, agencies could divest themselves of most obligations under (a)(2) simply by never publishing regulations that define any records as "final opinions"

2

and "orders," or "statements of policy and interpretations," or "administrative staff manuals and instructions." But Congress could not have intended that agencies have such unfettered authority to disregard this statutory obligation. As the Supreme Court has explained, "[FOIA]'s goal is 'broad disclosure,'" *Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011), and "the policy of [FOIA] requires that the disclosure requirements be construed broadly," *Dep't of Air Force v. Rose*, 425 U.S. 352, 366 (1976). Given that public posting of records under (a)(2) is one of the three mechanisms by which the statute achieves its goal of "broad disclosure"—the other two being publication in the Federal Register (a)(1) and production to individual requesters under (a)(3)—it cannot be that agencies can eliminate one-third of their FOIA obligations by either failing to promulgate definitions at all or defining the statutory terms in such a way as to make section (a)(2) meaningless.

Second, the most natural reading of the statute is that "in accordance with published rules" governs *how* agencies comply with (a)(2), not *what* records are subject to (a)(2). The proximity of the phrase "in accordance with published rules" to "shall make available for public inspection in an electronic format" makes clear that it is the manner in which the records are made available that must accord with published rules on the subject—if there are any. This reading finds further support in the use of the same phrase elsewhere in the same statute to describe how requests are to be made, not what materials are subject to request: Specifically, subsection (a)(3) provides that requests for records must be "made *in accordance with published rules* stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A) (emphasis added).[1]

Here, the proper understanding of the phrase poses no obstacle to NYLAG's request for public posting because the Department of Justice—of which EOIR and the BIA are components—does, in fact, have "published rules" governing the public posting of records under (a)(2):

> Records that are required by the FOIA to be made available for public inspection in an electronic format may be accessed through the [DOJ]'s website at http://justice.gove/oip/04_2.html. *Each component is responsible for determining which of its records are required to be made publicly available*, as well as identifying additional records of interest to the public that are appropriate for public disclosure, and for posting and indexing such records.

28 C.F.R. § 16.2 (emphasis added). Thus, not only does EOIR's failure to post unpublished BIA decisions violate FOIA, it also violates the agency's own regulation based on the agency's incorrect determination that unpublished BIA decisions are not required to be made publicly available.

---

[1] Under EOIR's interpretation of this phrase, an agency could also eliminate its need to respond to (a)(3) requests by declining to publish rules stating the procedures for FOIA requesters to follow.

3

Third, as noted above, the APA already defines the key terms "adjudication" and "order," *see* 5 U.S.C. § 551(6)–(7), and the term "opinion" has a common meaning that does not require regulatory definition, *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 159 (explaining that a document which "explains the reasons for [a] final disposition … plainly qualifies as an 'opinion'[] and falls within 5 U.S.C. § 552(a)(2)(A)"). Given the statutory definitions and plain meanings of these terms, no additional regulatory guidance is necessary to determine which records are subject to (a)(2)'s electronic posting requirement.

## II. FOIA Requesters Can Request Electronic Public Posting of Records Under § 552(a)(2).

EOIR's second ground for denying the request—that a requester seeking public posting cannot request that the agency comply with subsection (a)(2), but is required to request the records under (a)(3)—is also legally erroneous. Indeed, the express terms of FOIA state plainly that a member of the public may make a request for records under paragraph (2) of subsection (a).

As previously noted, FOIA provides three mechanisms by which agencies "shall make available to the public information." 5 U.S.C. § 552(a). First, agencies must "publish" certain information, including substantive rules, in the Federal Register. *Id.* § 552(a)(1). Second, under the statute's "electronic reading room" provision, agencies must "make available for public inspection and copying, through "electronic means," other important information not subject to the public requirement, including "final opinions" and "orders … made in the adjudication of cases." Third, "upon any request for records" not already published in the Federal Register or made publicly available through electronic means, agencies must make those records "promptly available" to the requester unless they are exempt from disclosure. *Id.* § 552(a)(3).

In explaining how agencies must respond to members of the public seeking access to public records, FOIA provides that "[e]ach agency, upon any request for records made under paragraph (1), (2), or (3)" must follow certain statutory requirements, including deadlines and provision of administrative appeals. *Id.* § 552(a)(6)(A). By its unambiguous terms, the provision demonstrates that FOIA contemplates that members of the public may request records under (a)(2). A "request for records made under" either (a)(1) or (a)(2) can only mean a request for publication of records in the Federal Register or a request for electronic public posting of records, respectively, just as a request for the production of records to the requester would necessarily be a request "made under" (a)(3). Congress would have no reason to spell out the statutory requirements for responding to requests under (a)(1) and (a)(2) if the only requests that are permitted are (a)(3) requests. Thus, FOIA's statutory scheme explicitly contemplates a request under (a)(2) for the electronic public posting of records and further imposes express obligations on agencies for responding to a request made under (a)(2).

Moreover, EOIR's reliance on *Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017) (*CREW*), is misplaced. As to whether a member of the public must request compliance with (a)(2) by making a request under (a)(3), *CREW* in fact says just the opposite of what EOIR's response claims it says. *CREW* expressly states that a requester may seek enforcement of section (a)(2)'s requirements "*without* first making a request for specific records under section 552(a)(3)." *Id.* at 1240 (emphasis added). *CREW* thus makes clear

4

that a member of the public may make "requests for information under sections 552(a)(1), (2), *or* (3)." *Id.* (emphasis added); *see also id.* at 1240–41 ("[T]he opinions and orders referred to in Section 552(a)(2), when properly requested, are required to be made available, and … such requirement is judicially enforceable without further identification under Section 552(a)(3) ….") (quoting *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972)).

The holding in *CREW* on which EOIR appears to rely in fact concerned another issue altogether: the extent of federal court remedial authority under § 552(a)(4)(B). *Id.* at 1241–44. Specifically, the question before the court was whether § 552(a)(4)(B) "vests courts" with "authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to [§ 552(a)(2)]." *Id.* at 1241, 1243. But the extent to which FOIA's jurisdictional grant to federal courts provides *courts* with the authority to remedy (a)(2) violations is wholly distinct from whether an agency must comply with a proper request under (a)(2), and whether the agency can remedy its past failure to comply with its affirmative obligation to make (a)(2) disclosures by complying with a valid (a)(2) request. While NYLAG maintains that *CREW* was wrongly decided to the extent it limited available judicial remedies for (a)(2) violations, *CREW* does not purport to force requesters seeking compliance with (a)(2) to make requests for records under (a)(3), nor does it limit an agency's (as opposed to a court's) obligation to comply with such requests. EOIR has the authority and obligation to electronically publicly post unpublished BIA decisions in response to NYLAG's request under (a)(2).

### III. NYLAG's Request Is Not Overbroad.

Although EOIR's contention that NYLAG's request is overbroad appears to be limited to what EOIR incorrectly construes to be a request for production of physical records under (a)(3) rather than NYLAG's actual request for compliance with (a)(2), to the extent EOIR relies on its overbreadth argument to resist electronic public posting under (a)(2) as well, EOIR's position is unfounded.

As an initial matter, FOIA's requirement that a requester "reasonably describe[]" the records sought—the statutory provision relied upon in both of the cases EOIR cites, *see Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000); *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (*AFGE*)—is found in § 552(a)(3)(A) and applies only to requests for records made under (a)(3), not to requests for electronic public posting under (a)(2). Accordingly, it is inapplicable to NYLAG's request under (a)(2).

In any event, EOIR is incorrect that NYLAG's request is overbroad. As EOIR concedes, a request is reasonable if it "enable[s] a professional agency familiar with the subject area to locate the record with a reasonable amount of effort." *Judicial Watch*, 108 F. Supp. 2d at 27. Moreover, the "sheer volume of records requested" is an insufficient basis to deny requests as it is "irrelevant" to whether a FOIA request has properly described the records sought. *Tereshchuk v. BOP*, 67 F. Supp. 3d 441, 454–55 (D.D.C. 2014) (citing *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982)). Here, NYLAG has requested electronic public posting of unpublished BIA decisions from November 1, 1996—the date on which FOIA required records subject to (a)(2) to be made available by "electronic means," 5 U.S.C. § 552(a)(2)—through the present. EOIR

5

cannot seriously contend that it is unable to locate these decisions, particularly given that—as NYLAG understands—the BIA, immigration judges, and government attorneys have access to most, if not all, unpublished BIA decisions already. NYLAG's request is thus readily distinguishable from one for all communications between government employees and all "companies, entities, and/or persons related to or doing or conducting business in any way with the People's Republic of China" that would implicate "almost every major corporation in the United States," *Judicial Watch*, 108 F. Supp. 2d at 26, or one for "every chronological office file and correspondent file, internal and external, for every branch office [and] staff office," *AFGE*, 907 F.2d at 208.

To the extent any review is required prior to electronic public posting of these decisions, EOIR has indicated that such review is limited to redacting "personal information, especially asylum, Convention Against Torture, and Violence Against Women Act information, which could be used to identify and persecute an alien or their families in their home countries."[2] Such concerns clearly apply only to a subset of BIA decisions and cannot be used as an obstacle to posting other unpublished BIA decisions. The potential need to redact certain personal information in a subset of the records is not a basis for denying NYLAG's request, and—as NYLAG previously made clear—NYLAG is willing to work with EOIR to develop a reasonable timeline for electronically posting the requested records.

\*\*\*

For the above stated reasons, we appeal EOIR's denial of NYLAG's FOIA request under § 552(a)(2) in full. If you have any questions regarding this appeal, please contact Danielle Tarantolo by phone at 212-613-6551 or by email at dtarantolo@nylag.org.

Thank you very much for your attention to this matter.

Sincerely,

Danielle Tarantolo
Jane Greengold Stevens

---

[2] Moreover, it is difficult to imagine any other information contained in these records that could potentially implicate FOIA's exemptions. Indeed, in the handful of unpublished decisions already available on EOIR's website, some of the opinions contain no redactions whatsoever, and the redactions in the other opinions appear to withhold only the specific types of personal information referenced by EOIR.