UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK LEGAL ASSISTANCE GROUP,

          Plaintiff,

   v.

BOARD OF IMMIGRATION APPEALS,
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW, and U.S. DEPARTMENT OF JUSTICE

          Defendants.

**No. 18 Civ. 9495 (PAC)**

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, AND IN FURTHER SUPPORT OF THE GOVERNMENT'S
MOTION TO DISMISS THE COMPLAINT AND FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for
Southern District of New York
United States Attorney's Office
86 Chambers Street, Third Floor
New York, New York 10007

Arastu K. Chaudhury
Assistant United States Attorney
*Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................3

   I.     FOIA Creates a Single Cause of Action With a Single Remedy ...................................3

   II.    To Be Adequate, An Alternative Remedy Need Not Offer The Exact Relief Plaintiff Seeks ...........................................................................................................................5

   III.   FOIA Does Not Require Proactive Disclosure of Non-Precedential BIA Decisions ....7

      A.  Plaintiff's Interpretation of "Final Opinions" Ignores Congressional Understanding At the Time FOIA Was Enacted ...........................................................................8

      B.  Many Non-Precedential BIA Decisions Are Not Subject to Section 552(a)(2) Because They Are Available For Sale Through Various Databases ..........................................10

   IV.   Undue Burden Should Be Considered In Addressing Any FOIA Request ................11

      A.  Undue Burden Analysis is Not Limited to Search and Segregability.........................12

      B.  Issues Such as Claims for Protection Under Asylum, Convention Against Torture, and Violence Against Women Act Are Not "Unique" ................................................13

      C.  Undue Burden Analysis Applies To All FOIA Requests ...........................................15

      D.  Non-precedential BIA Decision Redaction Project Highlights Substantial Burden ...16

   V.    Plaintiff Is Wrong About the Effect of the 2016 FOIA Amendment .........................18

   VI.   Alternatively, Summary Judgment for Plaintiff Should be Limited to Non-Restricted Non-Precedential BIA Decisions..................................................................................21

CONCLUSION......................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*,
    907 F.2d 203 (D.C. Cir. 1990)............................................................................. 12, 13, 16, 23

*Am. Immigration Lawyers Assn. v. Executive Office for Immigration Review*,
    830 F.3d 667 (D.C. Cir. 2016)............................................................................. 23

*Amuso v. DOJ*,
    600 F. Supp. 2d 78 (D.D.C. 2009) ...................................................................... 22

*Associated Press v. DOD*,
    554 F.3d 274 (2d Cir. 2009)................................................................................ 22

*Associated Press v. DOJ*,
    549 F.3d 62 (2d Cir. 2008)................................................................................... 22

*Ayuda, Inc. v. FTC*,
    70 F. Supp. 3d 247 (D.D.C. 2014) ....................................................................... 12

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438 (2002)............................................................................................. 8

*Bennett v. Spear*,
    520 U.S. 154 (1997)............................................................................................. 7

*Carney v. U.S. Dep't of Justice*,
    19 F.3d 807 (2d Cir. 1994).................................................................................. 15

*Cook v. Nat'l Archives & Records Admin.*,
    758 F.3d 168 (2d Cir. 2014)................................................................................ 22

*Council of and for the Blind v. Regan*, 709 F.2d 1521, 1531 (D.C. Cir. 1983) ........................ 5, 6

*CREW v. United States Dep't of Justice*,
    846 F.3d 1235, 1243–44 (D.C. Cir. 2017 ............................................................. 3

*Ctr. for Auto Safety v. Nat'l Hwy. Traffic Safety Admin.*,
    452 F.3d 798 (D.C. Cir. 2006) ............................................................................. 7

*Department of Justice v. Reporters Comm. for Freedom of the Press*
    489 U.S. 749 (1989)............................................................................................. 10, 21

*Dolan v. U.S. Postal Service,*
    546 U.S. 481 (2006) ................................................................................. 10

*Dunn v. Commodity Futures Trading Comm'n,*
    519 U.S. 465 (1997) ................................................................................. 18

*Fitzgerald v. Henderson,*
    251 F.3d 345 (2d Cir. 2001) .................................................................... 17

*Forest Service Employees for Environmental Ethics v. U.S. Forest Service,*
    524 F.3d 1021 (9th Cir. 2008) ................................................................ 23

*Grand Cent. P'ship, Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) .................................................................... 15

*Hopkins v. HUD,*
    929 F.2d 81 (2d Cir. 1991) ...................................................................... 22

*Kennecott Utah Copper Corp. v. United States Dep't of the Interior,*
    88 F.3d 1191 (D.C. Cir. 1996) .................................................................. 3

*Kissinger v. Reporters Comm. For Freedom of the Press,*
    445 U.S. 136 (1980) .............................................................................. 3, 4

*Landgraf v. USI Film Products,*
    511 U.S. 244 (1994) .......................................................................... 19. 20

*Long v. Office of Personnel Management,*
    692 F.3d 185 (2d Cir. 2012) .................................................................... 21

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ................................................................................... 7

*Mehta v. INS,*
    574 F.2d 701 (2d Cir. 1978) .................................................................. 8, 9

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,*
    879 F.2d 873 (D.C.Cir.1989) ................................................................... 21

*New Prime, Inc. v. Oliveria,*
    -- U.S. ---, 139 S. Ct. 532 (2019) ............................................................. 8

*New York City Employees' Retirement System v. S.E.C.,*
    45 F.3d 7 (2d Cir. 1995) ............................................................................ 5

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) .............................................................................. 8, 9

iii

*Norton v. Southern Utah Wilderness Alliance*,
     542 U.S. 55 (2004) ........................................................................................................... 7

*Nwozuzu v. Holder*,
     726 F.3d 323 (2d Cir. 2013) .......................................................................................... 4

*Panjiva, Inc. v. United States Customs & Border Prot.*,
     342 F. Supp. 3d 481 (S.D.N.Y. 2018) ......................................................................... 6

*Schrecker v. DOJ*,
     349 F.3d 657 (D.C.Cir.2003) ................................................................................. 22, 23

*Service Women's Action Network*,
     88 F. Supp. 2d 282, 290 (D. Conn. 2012) ............................................................ 12, 13

*Solar Sources, Inc. v. United States*,
     142 F.3d 1033 (7th Cir. 1998) ..................................................................................... 12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
     497 F.3d 144 (2d Cir. 2007) .......................................................................................... 4

*Town of Sanford v. United States*,
     140 F.3d 20 (1st Cir. 1998) ........................................................................................... 6

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*,
     510 U.S. 487 (1994) ................................................................................................ 21, 22

*U.S. Dep't of State v. Ray*,
     502 U.S. 164 (1991) ...................................................................................................... 22

*U.S. Dep't of State v. Washington Post Co.*,
     456 U.S. 595 (1982) ................................................................................................. 21-22

*Vietnam Veterans of Am. v. DHS*,
     8 F. Supp. 3d 188 (D. Conn. 2014) ............................................................................. 12

*Washington Legal Foundation v. Alexander*,
     984 F.2d 483 (D.C. Cir. 1993) ...................................................................................... 5

*Weingarten v. United States*,
     865 F.3d 48 (2d Cir. 2017) ..................................................................................... 19, 20

*Wisconsin Central Ltd. v. United States*,
     585 U.S. ----, 138 S. Ct. 2067 (2018) .......................................................................... 8

*Wolf v. CIA*,
     569 F. Supp. 2d 1 (D.D.C. 2008) ................................................................................ 12

*Xiao Ji Chen v. U.S. Dep't of Justice*,
    471 F.3d 315 (2d Cir. 2006)...................................................................................... 19

**Statutes and Rules**

5 U.S.C. § 552(a)(2)..................................................................................... passim

5 U.S.C. § 552(a)(4)........................................................................................... 16

5 U.S.C. § 552(a)(4)(B) ................................................................................. 3, 4, 5

5 U.S.C. § 552(a)(4)(F)(i) ................................................................................... 4

5 U.S.C. § 552(a)(6)........................................................................................ 3, 16

5 U.S.C. § 552(b) ........................................................................................... 4, 21

5 U.S.C. § 704 ..................................................................................................... 7

Fed. R. Civ. P. 5.2(c) ........................................................................................ 14

Fed. R. Evid. 408(a)..................................................................................... 16, 17

Defendants BIA, EOIR, and DOJ, through their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, submit this reply memorandum of law in further support of their motion to dismiss, or in the alternative, for summary judgment, and in opposition to Plaintiff's cross-motion for summary judgment.[1]

## PRELIMINARY STATEMENT

Plaintiff seeks to compel Defendants to add more than 750,000 records to their websites purportedly under the authority of FOIA Section 552(a)(2).  But FOIA does not authorize this relief—FOIA offers a single remedy, associated with a single cause of action, which arises after a single administrative process: the production of records to a FOIA requester.  Plaintiff identifies no good reasons not to follow the D.C. Circuit in *CREW* and *Kennecott*, which rejected the same claims Plaintiff makes here.  Plaintiff's arguments also rely on a misreading of FOIA's jurisdictional grant empowering courts to enjoin withholdings.  Only by distorting the meaning of "withholding," can Plaintiff come close to finding the relief it seeks in FOIA.

Nor does Plaintiff explain why it would have a claim under the APA, given the availability of a FOIA claim.  Plaintiff argues that the Government is taking inconsistent positions: at once arguing that Plaintiff is entitled to no relief under FOIA, yet has an adequate remedy there.  But this is not true because Plaintiff's problem arises directly as a result of its disavowal of the available FOIA remedy.  Despite Plaintiff's assertions to the contrary, the APA does not require that an adequate alternative remedy give Plaintiff the identical relief it seeks, not in the Second Circuit or anywhere else.

Even if Plaintiff has an available cause of action, Plaintiff's arguments that non-

---

[1] All capitalized terms not defined herein are defined in the Government's memorandum of law in support of its motion ("Govt's Br.") or in Plaintiff's memorandum of law in support of its cross-motion for summary judgment ("Pl. Br.").

precedential BIA decisions are "final opinions" under Section 552(a)(2) ignores the relevant understanding Congress had at the time it enacted FOIA.  Moreover, the records in question are not subject to Section 552(a)(2) because Agencies are required to make records available on their websites only if those records are not otherwise "offered for sale."  5 U.S.C. § 552(a)(2).  Many non-precedential BIA decisions are offered for sale through various online databases, and readily accessible to Plaintiff through those sources.

Plaintiff's arguments against the burden associated with responding to its FOIA request are meritless.  The undue burden analysis applies to all aspects of FOIA record processing, and the artificial distinctions Plaintiff attempts to construct in that process have no basis in the law or logic.  The issues that render most of the decisions difficult to process, *e.g.*, applications involving asylum, Convention Against Torture, and Violence Against Women Act claims, are replete in BIA decisions, and Plaintiff's assertions to the contrary are disingenuous, based on speculation, and rely on inappropriate, inadmissible evidence.  In any event, the uncontroverted facts show that Defendants would face an enormous burden if they are required to produce the records responsive to Plaintiff's FOIA request and that their value to the public is extremely limited given that these decisions apply to a specific individual based on a specific set of facts.

For the foregoing reasons, the Court should grant summary judgment to the Government, and deny Plaintiff's motion for summary judgment.

If the Court does permit the Plaintiff's claim to proceed, however, the obligations of Defendants should be limited by the effective date of the 2016 FOIA Amendment, which mandated e-reading rooms.  Any obligations should also be limited by the sorting process undertaken by EOIR's Clerk's Office, which separates BIA decisions into Restricted and Non-Restricted categories based on the presence of extensive amounts of confidential information,

and effectively balances the privacy and public interests consistent with the applicable FOIA exemptions.

## ARGUMENT

### I.      FOIA Creates a Single Cause of Action With a Single Remedy

Plaintiff asserts that because a court has broad powers under FOIA, Plaintiff is entitled to the specific relief it seeks, namely an order compelling the agency to change its website.  Pl. Br. at 7-8.  Plaintiff misapprehends FOIA.  The Act creates a single cause of action, and the ultimate relief available through that single cause of action is production of the documents to the requester.  *See* 5 U.S.C. § 552(a)(4)(B); *CREW v. United States Dep't of Justice*, 846 F.3d 1235, 1243–44 (D.C. Cir. 2017); *Kennecott Utah Copper Corp. v. United States Dep't of the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996).  FOIA expressly provides that all violations of the statute, whether predicated on Section 552(a)(1), (2), or (3), are channeled into a single administrative process and a single cause of action that allows Plaintiff to obtain the requested records if it prevails.  *See id.* § 552(a)(6); *id.* § 552(a)(4)(B).  The broad remedial powers of the district court in FOIA cases are cabined by the jurisdictional grant "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B).  The Court's other powers, *e.g.*, ordering searches, enjoining withholdings, etc., are powers that aid in securing that ultimate relief.  *See Kissinger v. Reporters Comm. For Freedom of the Press*, 445 U.S. 136, 150 (1980) (FOIA "authorizes federal courts to ensure *private access* to requested materials," and "[j]udicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by § 552," when an agency has "(1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" (emphasis added)).

The D.C. Circuit's holding in *CREW* and *Kennecott* that FOIA provides a single remedy—receipt of the documents—is clear, consistent with FOIA's statutory language, and persuasive. *See* Govt. Br. at 8-11.  Plaintiff argues that the D.C. Circuit is wrong because it did not consider "the statutory language authorizing injunctions against withholding of records," and the plain meaning of "enjoin the agency from withholding agency records" encompasses compelling an agency to put documents on its website.  Pl. Br. at 7, 9.  But this reading of FOIA's jurisdictional grant turns on its head the plain meaning of "withholding," which, in this context, is "to refrain from granting, giving, or allowing."  *See* Merriam-Webster Dictionary.[2] More importantly, withholding has a specific meaning in FOIA: "a 'withholding' occurs within the meaning of FOIA whenever an agency *declines to produce* agency records."  *Kissinger*, 445 U.S. at 162 (Stevens, concurring in part, dissenting in part) (emphasis added).

The meaning of "withholding" in the jurisdictional grant should also be read consistently with the other uses of the term in the statute.  *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013) (a term's meaning should be discerned by "looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 157 (2d Cir. 2007) ("Fundamental to any task of interpretation is the principle that text must yield to context.").  FOIA provides specific criteria for the proper withholding of records, *see, e.g.,* 5 U.S.C. § 552(b), and the Act repeatedly and expressly links "withholding" with production of records to the requester, *see id.* § 552(a)(4)(B); *id.* § 552(a)(4)(F)(i) ("[w]henever the court orders the production of any agency records improperly withheld from the complainant . . . ").  To expand the reach of the specific jurisdictional grant in

---

[2] Found at https://www.merriam-webster.com/dictionary/withholding?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

Section 552(a)(4)(B) to include the relief Plaintiff seeks here, requires the Court to ignore the context and use of the term "withholding" in FOIA.  The Court should reject that request, and adopt the holding of *CREW* and *Kennecott*.

## II.     To Be Adequate, An Alternative Remedy Need Not Offer The Exact Relief Plaintiff Seeks

If the Court rules in favor of the Government on the relief available through FOIA, Plaintiff alternatively seeks relief through APA, but that claim is blocked by the available FOIA claim.  *See* Govt. Br. at 11-13.  Plaintiff argues that the Court should "reject the government's tortured view that 552(a)(2)'s mandate is unenforceable under FOIA, and, yet, FOIA offers an 'adequate remedy' for violations of § 552(a)(2)."  Pl. Br. at 11.  The only reason Section 552(a)(2) is purportedly "unenforceable" here is due to Plaintiff's rejection of the available remedy.  This is a problem entirely of Plaintiff's making, and it does not render the available, alternative remedy inadequate.

Plaintiff also contends erroneously that the Second Circuit holds that the alternative remedy is adequate only if it provides the same "specific *substantive* relief" requested by a litigant as opposed to the "general *form* of relief."  Pl. Br. at 13 (emphasis in original).  While the Second Circuit has stated that there is no APA claim if a plaintiff has "an adequate alternative legal remedy against someone else—a remedy that offers the same relief the plaintiffs seek from the agency," that does not mean that a remedy is only adequate if it is identical to the relief sought by the plaintiff.  *New York City Employees' Retirement System v. S.E.C.*, 45 F.3d 7, 14 (2d Cir. 1995) ("*NYCERS*") (citing *Washington Legal Foundation v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993); *Council of and for the Blind v. Regan*, 709 F.2d 1521, 1531 (D.C. Cir. 1983)).  In *NYCERS*, the plaintiffs, who were institutional shareholders in the Cracker Barrel Old Country Store, Inc., had sought to have a shareholder resolution expressly prohibiting

5

discrimination on the basis of sexual orientation included in proxy materials for the annual shareholder meeting. *Id.* at 9-10. After the company refused, and the SEC issued a "no action letter" based on its interpretation of what types of proposals could be excluded from proxy materials, the plaintiffs sued the SEC under the APA, challenging the interpretation in the no-action letter. *Id.* The Second Circuit held that because the plaintiffs could raise and adjudicate the same issues against someone other than the agency, namely the company, an APA claim was precluded. *Id.* at 14. In *NYCERS*, the alternative relief—an injunction against the company— was wholly different in substance from the APA relief—a declaration of the rule interpretation as arbitrary and capricious—and, yet, was entirely adequate. *Id.* In short, the Second Circuit has not held that to be adequate, alternative relief must provide the same specific substantive relief that a plaintiff seeks.

Indeed, no court has ever held that an adequate alternative remedy must be identical to the relief sought by a litigant. Quite to the contrary, courts have consistently held that when Congress provides a specific remedy that addresses the same injury, it is adequate even if an APA action "would be *more effective.*" *Council of and for the Blind*, 709 F.2d at 1532 (emphasis in original); *see also Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998) ("A legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff."); *Panjiva, Inc. v. United States Customs & Border Prot.*, 342 F. Supp. 3d 481, 495 (S.D.N.Y. 2018) ("Alternative remedies need not be identical to bar review under § 704."). Here, FOIA permits Plaintiff to access the records it seeks by obtaining them directly, but Plaintiff has refused to accept those records. Plaintiff's election to refuse the available remedy does not render the FOIA remedy inadequate. The Court should not permit Plaintiff to create a new path to relief by refusing the available one.

Moreover, while Plaintiff claims that it is not asking the Court to "order general compliance with the statute," Plaintiff argues that its FOIA request permits it to compel Defendants under the APA to comply with its obligations under Section 552(a)(2).  *See* Pl. Br. at 10.  Plaintiff does not challenge any particular "final agency action" that "mark[]s the consummation of the agency's decisionmaking process" in which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted); *see also* 5 U.S.C. § 704.  Nor does Plaintiff "direct its attack against some particular 'agency action' that causes it harm," as opposed to seeking broad improvements within an agency's overall program.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  Instead, Plaintiff seeks to challenge Defendants' general practice, and such a generic challenge cannot provide the requisite final agency action for an APA claim.  *See Ctr. for Auto Safety v. Nat'l Hwy. Traffic Safety Admin.*, 452 F.3d 798, 809-10 (D.C. Cir. 2006) (agency policy setting forth guidelines while retaining discretion to engage in case-by-case evaluation is not "final agency action" under APA).  Indeed, Plaintiff ultimately acknowledges that it "only seeks to compel defendants to comply with the statutory requirements," Pl. Br. at 19, that is, Plaintiff seeks an order seeking general compliance with the agencies' obligations under the law.   Such an order is inappropriate.  *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004).

### III.    FOIA Does Not Require Proactive Disclosure of Non-Precedential BIA Decisions

Plaintiff claims that the plain meaning of Section 552(a)(2)'s "final opinions" encompasses every BIA decision in the immigration process, as opposed to only BIA decisions with precedential effect.  Pl. Br. at 14.  Plaintiff's interpretation of "final opinions" runs counter to the Congressional understanding of the term at the time FOIA was enacted.  Additionally, the agencies have complied with the proactive disclosure obligations through the availability of

precedential decisions and certain non-precedential decisions via commercial outlets, like Westlaw, LexisNexis, and the Immigrant & Refugee Appellate Center, LLC ("IRAC").

### A. Plaintiff's Interpretation of "Final Opinions" Ignores Congressional Understanding At the Time FOIA Was Enacted

None of the sources on which Plaintiff relies to establish the "ordinary meaning" of "final opinions" specifically address which decisions in immigration cases are "final opinions" under FOIA. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (Courts must "determine whether the language at issue has a plain and unambiguous meaning with regard to *the particular dispute in the case*." (emphasis added)). Nor does Plaintiff attempt to address how "final opinions" would apply to the different types of decisions generated by the immigration process that are implicated by the request. *See* Gov't Br. at 14. To give the proper effect to Section 552(a)(2) here, the Court must identify Congress's intent when it used the term "final opinions," and those "words generally should be 'interpreted as taking their ordinary . . . meaning . . . *at the time Congress enacted the statute*.'" *New Prime, Inc. v. Oliveria*, -- U.S. ---, 139 S. Ct. 532, 535 (2019) (quoting *Wisconsin Central Ltd. v. United States*, 585 U.S. ----, 138 S. Ct. 2067, 2074 (2018)) (emphasis added). Indeed, courts should avoid "freely invest[ing] old statutory terms with new meanings." *Id.* Thus, what contemporary sources may describe as "final" must yield to Congress's understanding when it enacted FOIA, and, at that time, Congress understood "final opinions" to only reach decisions that have precedential effect. *See* Gov't Br. at 14-15.

Plaintiff claims that case law forecloses the Government position, relying on *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), and *Mehta v. INS*, 574 F.2d 701 (2d Cir. 1978), but Plaintiff's reliance on those cases is misplaced. *See* Pl. Br. at 15-16. As Plaintiff acknowledges, the BIA decision referred to in *Mehta* was precedential. Pl. Br. at 15. Moreover, the Circuit was

8

addressing an entirely different question: whether the Government could only make use of a BIA

decision if had first been published in the Federal Register, *i.e.*, complied with Section 551, and

the *Mehta* court held that it did not. *Mehta*, 574 F.2d at 705. The court did not address whether

non-precedential BIA decisions were subject to Section 552(a)(2).

The memoranda at issue in *Sears* also had precedential effect. Those memoranda were

generated by the General Counsel's Office of the NLRB specifically to allow them "to formulate

a coherent policy, and to achieve some measure of uniformity, in enforcing the labor laws." 421

U.S. at 141. In particular, the memoranda established "uniform policies in those legal areas with

respect to which Regional Directors are required to seek advice until a definitive policy is arrived

at." *Id.* at 157 (internal quotation marks omitted). In short, the memoranda at issue in *Sears*

were establishing agency-wide policies that applied to all cases, *i.e.*, they had precedential effect.

Plaintiff also tries to use the legislative history to argue that FOIA requires disclosure of

the requested records because they constitute "the 'working law' of the BIA, 'embodied in

thousands of orders [and] opinions.'" Pl. Br. at 17 (quoting H.R. Rep. 89-1497, reprinted in

1966 USCCAN at 2424). But the legislative history explicitly states that "the [federal]

bureaucracy has developed its own form of case law. This law is embodied in thousands of

orders, opinions, statements, and instructions issued by hundreds of agencies." H.R. Rep. 89-

1497, reprinted in 1966 USCCAN at 2424. At the time, Congress was contemplating that the

entirety of the federal government's disclosures would be comprised of "thousands of orders,

opinions, statements, and instructions from "hundreds of agencies"—not *hundreds of thousands*

(or more) opinions from a single agency. The legislative history also states that proactive

disclosure obligations may not apply to "any advisory interpretation on a specific set of facts

which is requested by and addressed to a particular person, provided that such interpretation is

not cited or relied upon by an officer or employee of the agency as a precedent in the disposition

of other cases." *Id.* Thus, in constructing Section 552(a), Congress was focused on whether the

agencies were disclosing rules of decision that would apply in subsequent cases, and not every

decision regarding benefits or issues addressed by an agency. *Id.* When precedential effect was

absent from a decision or opinion, Congress understood that decision "may not be required to [be

made] available for public inspection and copying," *i.e.*, subject to Section 552(a)(2). *Id.* Thus,

non-precedential BIA opinions, which lack precedential effect, are not "final opinions" for the

purposes of Section 552(a)(2).

### B. Many Non-Precedential BIA Decisions Are Not Subject to Section 552(a)(2) Because They Are Available For Sale Through Various Databases

FOIA contains an exception to the affirmative obligation that agencies "make available

for public inspection in an electronic format" the records enumerated in Section 552(a)(2),

namely, "unless the materials are promptly published and copies offered for sale."  5 U.S.C.

§ 552(a)(2).  This language has been in the statute from when it was originally passed by

Congress, *see* P.L. 90-23, 81 Stat. 54 (June 5, 1967), and Congress does not offer any guidance

in the legislative history about what it precisely means.  But the phrase's likely meaning can be

gleaned by examining the purpose of the statute and the specific provision at issue.  *Dolan v.*

*U.S. Postal Service*, 546 U.S. 481, 486 (2006).  Given that the overall purpose of FOIA is to

ensure that the public knows "what their government is up to,"  *Department of Justice v.*

*Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989), and Section 552(a)(2)'s

specific purpose is to ensure that individuals are not subject to an agency's "secret law,"

*Sears,* 421 U.S. at 153 (quoting H.R. Rep. No. 89-1497), the most reasonable interpretation of

this exception, is that it permits the agency to disseminate materials subject to Section 552(a)(2)

through commercial means.  Thus, Defendants can comply with Section 552(a)(2) by making the

records in question available through an agency's electronic reading room, or by making the records available commercially.

Here, many of the records at issue are made available to companies for sale. EOIR makes non-precedential BIA decisions, which do not contain extensive amounts of confidential information related to sensitive issues, available through the EOIR Law Library.[3] Decl. of Cynthia L. Crosby ¶¶ 6-7. Companies and organizations, like Westlaw, LexisNexis, and IRAC, access non-precedential decisions through EOIR's Law Library, and then publish and "provide access to those decisions for a fee." Compl. ¶ 20; Ziesemer Decl. ¶ 12. Through those databases, the public can access tens of thousands of non-precedential BIA decisions, including very recent ones.[4] In short, non-precedential BIA decisions that do not risk exposing the identities of vulnerable populations upon publishing are widely available through the major, subscription-based legal research databases, and thus, are "promptly published and offered for sale," ensuring that the records are sufficiently available to the public consistent with FOIA. 5 U.S.C. § 552(a)(2). Accordingly, Defendants have complied with its obligations under Section 552(a)(2), and Plaintiff's complaint should be dismissed.

IV.    **Undue Burden Should Be Considered In Addressing Any FOIA Request**

Plaintiff does not deny that the records it seeks contain confidential information, or that the Government would have to review and redact that information to comply with its obligations under FOIA. Plaintiff does, however, argue that the Court should not consider the Government's

---

[3] The remainder of non-precedential BIA decisions contains extensive confidential material, and Defendants do not disclose those materials because of privacy concerns and other statutory and regulatory obligations. Crosby Decl. ¶¶ 6-7.

[4] Westlaw, https://1.next.westlaw.com, Federal Administrative Decisions & Guidance, Department of Justice, Executive Office of Immigration Review, Board of Immigration Appeals Decisions; LexisNexis, https://advance.lexis.com, Administrative Materials, All Immigration Administrative Materials, Immigration Non-Precedent Decisions:BIA).

asserted burdens because they do not relate to search or segregability, that the confidential information is very limited and occurs only in "unique" documents, that the undue burden does not apply to Plaintiff's claim, and that there are documents the Government could produce. Plaintiff is wrong on all accounts, and relies on speculation or improper evidence to make its claim. The Court should reject Plaintiff's arguments, and grant summary judgment to the Government.

### A.  Undue Burden Analysis is Not Limited to Search and Segregability

Plaintiff argues that since it may not be unduly burdensome to locate records, the Court cannot and should not consider the burdensomeness of the review and redaction process. Pl. Br. at 20. That is wrong as a matter of law and as a matter of common sense. The law is clear: "An agency need not respond to a request that is 'so broad as to impose an unreasonable burden upon the agency,' such as one which 'require[s] the agency to locate, review, redact, and arrange for inspection a vast quantity of material.'" *Service Women's Action Network v. Dep't of Defense*, 88 F. Supp. 2d 282, 290 (D. Conn. 2012) (quoting *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990)); *see, e.g.*, *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (finding unreasonable the time needed to segregate exempt portions from non-exempt portions); *Vietnam Veterans of Am. v. DHS*, 8 F. Supp. 3d 188, 203-04 (D. Conn. 2014) (FOIA request for which agency would need to locate, review, and make heavy redactions to 26,000 packets, each of which contained 50 pages, was unreasonably burdensome); *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (finding unreasonable manual redaction of millions of consumer complaints); *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (finding unreasonable a frame-by-frame review of microfilm). The law makes no artificial distinction between the search, review, and redaction process in assessing burden, nor would it

makes sense to do so.  Consider, for example, a FOIA request that seeks all documents an agency has in its custody and control.  Such a search may be simple to conduct, but the review and redaction process would undoubtedly be unduly burdensome.  *See Am. Fed'n Of Gov't Employees*, 907 F.2d at 209 (holding that while a search may be precise enough to identify responsive records, a request may still be "so broad as to impose an unreasonable burden upon the agency. They would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material.").

Nor does it make any sense to limit the undue burden analysis to review for segregable material.  Pl. Br. at 21.  Such an interpretation misunderstands how Defendants conduct review of responsive records.  The review process encompasses both a segregability analysis as well as assessments for responsiveness and exemptions.  *See* Schaaf Decl. ¶¶ 8-15.  It makes little sense to suggest that searching for responsive materials or segregating nonexempt materials from exempt materials may constitute an undue burden, but identifying the exempt material itself cannot be unduly burdensome.  The Court should reject Plaintiff's attempt to create nonsensical distinctions in the FOIA review process, and assess the burden created by the process as a whole. *See Am. Fed'n of Gov't Emps,* 907 F.2d at 209; *Service Women's Action Network*, 88 F. Supp. 2d at 290.

### B.  Issues Such as Claims for Protection Under Asylum, Convention Against Torture, and Violence Against Women Act Are Not "Unique"

Plaintiff's contention that issues involving claims for protection under asylum, the Convention Against Torture, and the Violence Against Women Act are somehow "unique," Pl. Br. at 21-22, is curious considering that NYLAG works regularly on immigration cases, and it is thus aware that such issues regularly appear side-by-side in the same case.  *See* Ziesemer Decl. ¶¶ 3-8.  Indeed, even the Federal Rules of Civil Procedure expressly recognize as a matter of

13

course that immigration cases are so replete with confidential information that limiting access to them is warranted. *See* Fed. R. Civ. P. 5.2(c), Advisory Comm. Notes. (providing for "limited public access in . . . immigration cases [because they] are entitled to special treatment due to the prevalence of sensitive information and the volume of filings.").

To counter the detailed Schaaf Declaration, Plaintiff's opposing declaration relies on anecdotal information, *see* Ziesemer Decl. ¶ 11 (citing to a single case which contains reference to a non-precedential BIA opinion), non-specific speculation, *id.* ¶¶ 14-17 (discussing review of unspecified decisions with redactions without explaining how the records were selected, from where, how and when the review was conducted, etc.), and inadmissible hearsay, id. ¶ 20 ("Mr. Melo explained . . ."). Even though Plaintiff suggests that there may be instances in which decisions were released without appropriate redactions, *see* Ziesemer Decl. ¶ 17, this in no way means Defendants can ignore their obligations to address the privacy interests of individuals identified in records in this case. In short, Plaintiff's declarations are insufficient to counter the detailed accounting of burden provided in the Schaaf Declaration.

Nonetheless, Defendants have supplemented their initial declarations to address the prevalence of Plaintiff's so-called "unique" issues. The records implicated by Plaintiff's FOIA request, which number more than 750,000, can be divided into two broad categories: Restricted and Non-Restricted—the former cannot be released to the EOIR Law Library, whereas the latter can.[5] Crosby Decl. ¶ 7. The BIA creates this distinction based on the amount of confidential

---

[5] This is, in part, why Plaintiff can find available BIA decisions with limited redactions. Pl. Br. at 21-22. Moreover, the non-precedential BIA decisions identified by Plaintiff were available through Westlaw. *See* Pl. Br. at 2 n. 2, 3, 4. Indeed, a cursory search of Westlaw's database reveals that more than 10,000 non-precedential decisions are readily available to Plaintiff. *See* Westlaw, https://1.next.westlaw.com, Federal Administrative Decisions & Guidance, Department of Justice, Executive Office of Immigration Review, Board of Immigration Appeals

information found in the records, namely whether they contain certain issues, including asylum, Convention Against Torture, and Violence Against Women Act claims. *Id.* An assessment of BIA records reveals that the ratio of Restricted to Non-Restricted is nearly 6 to 1, that is, there are six times as many Restricted decisions as Non-Restricted decisions. *Id.* ¶ 8. Given the predominance of documents containing confidential materials over those that do not, Defendants are obligated to review every line of every record prior to production to protect exposing the identities of vulnerable populations upon publishing, and Plaintiff's speculations to the contrary must be rejected. *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (Agency affidavits are "accorded a presumption of good faith," which "cannot be rebutted by purely speculative claims."); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (A court should award summary judgment if the affidavits provided by the agency are "adequate on their face."). Thus, the Government's declarations regarding the likely burden to the agency if compelled to proceed with processing more than 750,000 records remain uncontroverted, and the Government is entitled to summary judgment on burden. *See* Schaaf Decl. ¶¶ 17-30; Crosby Decl. ¶ 8.

### C.  Undue Burden Analysis Applies To All FOIA Requests

Plaintiff also argues that the undue burden does not apply to an agency's obligations under Section 552(a)(2) because that analysis is limited to requests made pursuant to Section 552(a)(3) for specific records. Pl. Br. at 18. Plaintiff provides no case law supporting such a

---

Decisions (search for "this is an unpublished decision" returns default maximum of 10,000 cases); *see also* LexisNexis, https://advance.lexis.com, Administrative Materials, All Immigration Administrative Materials, Immigration Non-Precedent Decisions: BIA). Thus, Plaintiff cannot plausibly maintain that it is at any disadvantage in finding cases to which it clearly has access.

limitation, and instead, Plaintiff argues from general principles of transparency that some "agency records are so vital to the public's understanding of the federal government that it mandated their proactive disclosure." *See id.* at 19. Plaintiff is incorrect.

Plaintiff has made a FOIA request for documents that it claims should be proactively disclosed under 552(a)(2), and FOIA itself does not distinguish between the process for addressing a request made pursuant to Section 552(a)(1), (2), or (3). *See* 5 U.S.C. § 552(a)(4) (setting forth how the process with operates, expressly allowing the agency to consider the burdens it faces in addressing such a request the relevant, and creating the FOIA cause of action); 5 U.S.C. § 552(a)(6) (setting forth administrative procedures for addressing request under 552(a)(1), (2), or (3)). The administrative procedures and the cause of action is the same regardless of the provision a litigant seeks to enforce, and the defenses to that cause of action apply here. *See, e.g.*, *Am. Fed'n of Gov't Emps.*, 907 F.2d at 209 (FOIA simply does not "require the agency" to process such "a vast quantity of material."). Thus, the undue burden analysis applies to Plaintiff's FOIA claim.

### D.  Non-precedential BIA Decision Redaction Project Highlights Substantial Burden

Plaintiff refers to discussions it had during the administrative process with Defendants regarding a project to redact non-precedential BIA decisions from October 2015 to December 2016 as an example of records Defendants could disclose without much burden. Pl. Br. at 18 (citing Tarantolo Decl. Ex. B). The Court cannot and should not consider the communication attached as Exhibit B to the Tarantolo Declaration in its assessment of summary judgment because it is a settlement communication covered by Federal Rule of Evidence 408(a).

When seeking or opposing summary judgment, a party "must show that there is *admissible evidence* sufficient to support a finding in her favor on the issue that is the basis for

the motion." *Fitzgerald v. Henderson*, 251 F.3d 345, 360-61 (2d Cir. 2001) (emphasis added).
With respect to the redaction project, Plaintiff relies on an email from the agency to Plaintiff
seeking a compromise with respect to Plaintiff's FOIA request.  Tarantolo Decl. Ex. B ("If you
will narrow the scope of your request, I can provide you, expeditiously, all the decisions we have
already redacted for 2015-2017.").  This communication, thus, consists of "statement[s] made
during compromise negotiations about the [Plaintiff's] claim," and cannot be used "either to
prove or disprove the validity . . . of [that] disputed claim or to impeach by prior inconsistent
statement or a contradiction."  Fed. R. Evid. 408(a).  Accordingly, the Court should not consider
those communications in determining whether summary judgment is appropriate for either party.

    In any event, the communications here support the Government's position that the task of
complying with Plaintiff's FOIA request would be unduly burdensome.  In the email, the agency
states that because of privacy and confidentiality concerns, "especially asylum, Convention
Against Torture, and Violence Against Action information," two FOIA processors, "working this
project as their primary focus, [took] 18 months to redact the decisions from October 2015 to
December 2016."  Tarantolo Decl. Ex. B.  Based on the email, the Government made
conservative estimates in the Schaaf Declaration with respect to how much time record
processing would take,[6] exclusive of locating non-precedential BIA opinions that exist only in

---

[6] The email states that two FOIA processors took 18 months to review 14 months of non-precedential opinions, which implies that it took approximately 2.6 work months for one person to review one month of non-precedential material.  Here, the timeframe at issue is from 1997 through 2018 – 252 months – and if you subtract out 14 months, there remain 238 months of decisions to review and redact.  At a rate of 2.6 work months per person to review one month of decisions, it would approximately 51 work years per person to complete responding to this one FOIA request, or about 8.5 years for all FOIA staff at EOIR working exclusively on the project. This is longer than the Government's estimates of 6.7 works years for the entire staff to complete review of the documents in eDecisions.  *See* Schaaf Decl. ¶ 30.

17

hard-copy.[7]  *See* Schaaf Decl. ¶¶ 18, 28-29.  Moreover, this redaction project was a pilot project

to assess the feasibility of a discretionary release.  Second Decl. of Joseph R. Schaaf ¶ 5.  Once

the preliminary review of records was completed, EOIR discontinued the project, and redirected

resources to the increasing number of FOIA requests the agency was receiving.  *Id.* ¶ 7.

V.      **Plaintiff Is Wrong About the Effect of the 2016 FOIA Amendment**

Plaintiff argues that the changes to Section 552(a)(2) in the 2016 FOIA Amendment were

a mere "reaffirmation of the agencies' preexisting obligation to make records available online"

under the 1996 FOIA Amendment.  Pl. Br. at 24.  Plaintiff reads out any substantive effect from

changing the operative language in the statutory text from requiring that agencies make available

"for public inspection and copying" to "for public inspection in an electronic format," P.L. 114-

185, 130 Stat. 538, 538 (June 30, 2016).  Plaintiff relies on language already included in Section

552(a)(2) that states that "[f]or records created on or after November 1, 1996, within one year

after such date, each agency shall make such records available, including by computer

telecommunications or, if computer telecommunications means have not been established by the

agency, by other electronic means." 5 U.S.C. § 552(a)(2).  While the latter language, which is

from the 1996 FOIA Amendment, is not a model of clarity, Plaintiff claims that it clearly means

that Congress required agencies to create e-reading rooms on their websites.  *See* Pl. Br. at 23-24.

To make the language from the 1996 FOIA Amendment substantively co-extensive with the

2016 FOIA Amendment changes to Section 552(a)(2) would require the Court to render the later

changes mere surplusage, thereby violating a basic canon of statutory interpretation.  *See Dunn v.*

---

[7] The Government respectfully requests that if the Court is inclined to grant Plaintiff summary judgment in whole or in part, that it permit the Government to supplement its declaration as it pertains to the burden associated with the collection process of the hard-copy non-precedential BIA decisions identified in the Schaaf Declaration.

*Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997) ("[L]egislative enactments

should not be construed to render their provisions mere surplusage."); *Xiao Ji Chen v. U.S. Dep't*

*of Justice*, 471 F.3d 315, 324 (2d Cir. 2006) ("[W]e do not assume Congress intended to include

pure 'surplusage' in its enactments.").

But the language from the 1996 FOIA Amendment has a more limited meaning.

*Compare* S. Rep. 104-272, at 11, *with* S. Rep. 114-4, at 7. *See* 5 U.S.C. § 552(a)(2).  Plaintiff

derives its interpretation from the use of the term "computer telecommunications," which it

contends is synonymous with availability "on-line."  Pl. Br. at 23 (citing S. Rep. 104-272, at 11).

However, the same legislative history also states that "[i]f an agency cannot make these materials

available by computer telecommunications, then the materials should be made available in some

other electronic form, such as CD-ROM or on disk."  S. Rep. 104-272, at 11.  In short, Congress

left open options for agencies that did not require posting materials on-line.

On the other hand, the 2016 FOIA Amendment eliminated those options.  That

amendment expressly changed "the existing requirements that certain records and reports be

made available for public inspection to *mandate* that records available for public inspection be

made available in an electronic format in order to ease public access."  S. Rep. 114-4, at 7

(emphasis added).  Thus, the 2016 Amendment transformed a requirement subject to limited

agency discretion into an express mandate, fundamentally changing the expectations and

obligations of the agency.  *Id.*  Such a change should not be given retroactive effect.  *See*

*Weingarten v. United States*, 865 F.3d 48, 56 (2d Cir. 2017) (quoting *Landgraf v. USI Film*

*Products*, 511 U.S. 244, 280 (1994)).

Plaintiff also incorrectly argues that the 2016 FOIA Amendment is expressly retroactive.

*See* Pl. Br. at 24-25.  Specifically, Plaintiff contends that the 2016 FOIA Amendment "requires

agencies to make the § 552(a)(2) records 'available for public inspection in an electronic format'" and since the requested records are subject to § 552(a)(2) the 2016 FOIA Amendment changes apply.  Pl. Br. at 25.  Here, Plaintiff simply infers the existence of retroactivity from the fact that the language on its face applies to all records. In an attempt to side-step the entire retroactivity analysis Plaintiff ignores the express statements regarding retroactivity in the 2016 FOIA Amendment itself.  *See* P.L. 114-185, 130 Stat. at 544–45.  Plaintiff avoids the retroactivity analysis by pointing to language that may be consistent with either interpretation— retroactivity turns on whether new language "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."  *See Weingarten v. United States*, 865 F.3d 48, 56 (2d Cir. 2017) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)).

Plaintiff also argues that its FOIA request falls within the ambit of the new language because it has made a request for documents after the passage of the 2016 FOIA Amendment. Pl. Br. at 24-25.  But Plaintiff cannot have it both ways: simultaneously claim that it has made a "request for records," Pl. Br. at 25, and then not accept production of those records, *see* Compl. ¶ 28.  Plaintiff has asked for records that it claims should have been made public under Section 552(a)(2), and the scope of that request turns on whether the agency was obliged to proactively disclose decisions in the e-reading room, *i.e.*, whether the 2016 FOIA Amendment is retroactive. In short, Plaintiff cannot avoid the retroactivity analysis.

Nothing in the 2016 FOIA Amendment indicates that the changes were meant to apply retroactively, and if the Court reaches the issue, it should limit the scope of Plaintiff's request to BIA decisions issued after the enactment of the 2016 FOIA Amendment.

## VI.   Alternatively, Summary Judgment for Plaintiff Should be Limited to Non-Restricted Non-Precedential BIA Decisions

Insofar as the Court grants the Plaintiff summary judgment, the Court should limit any disclosure to Non-Restricted non-precedential BIA decisions.  After a decision is rendered by the BIA, the Clerk's Office reviews it on the basis of criteria to determine, *inter alia*, whether it addresses sensitive issues such as applications for asylum, protection under the Convention Against Torture, protection under the Violence Against Women Act, or unaccompanied juveniles.  Crosby Decl. ¶ 7.  If it does, then the Clerk's Office designates the decision as Restricted, otherwise, the decision is designated as Non-Restricted and is made available through the EOIR Law Library.  *Id.*  In doing so, the Clerk's Office effectively balances the applicable privacy interests implicated in the records against the public interest in knowing decisions in specific cases, conducting a categorical balancing of the considerations applicable to FOIA exemptions under Section 552(b)(6) ("Exemption 6").

Agencies may conduct the balancing of interests implicated by Exemption 6 on a categorical rather than case-by-case basis; that is, an agency may identify a class of documents subject to the exemption and assert the exemption over that class.  *Reporters Comm.*, 489 U.S. at 777; *see also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 501 (1994); *Long v. Office of Personnel Management*, 692 F.3d 185, 192 (2d Cir. 2012); *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989).

Exemption 6 "protect[s] individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).  The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any

21

"information which applies to a particular individual . . . sought from Government records." *Id.*
at 602; *see also Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014).
The privacy interest in Exemption 6 "belongs to the individual, not the agency." *Amuso v. DOJ*,
600 F. Supp. 2d 78, 93 (D.D.C. 2009).

"The privacy side of the balancing test is broad and encompasses all interests involving
the individual's control of information concerning his or her person." *Id.* at 88; *see also
Associated Press v. DOJ*, 549 F.3d 62, 65 (2d Cir. 2008).  Any privacy interest that is more than
*de minimis* triggers a balancing analysis.  *See Associated Press v. DOD*, 554 F.3d 274, 285 (2d
Cir. 2009) ("Thus, once a more than *de minimis* privacy interest is implicated the competing
interests at stake must be balanced in order to decide whether disclosure is permitted under
FOIA.").  On the other hand, the "only relevant public interest in disclosure to be weighed in this
balance is the extent to which disclosure would serve the core purpose of the FOIA, which is
contribut[ing] significantly to public understanding *of the operations or activities of the
government*." *Fed. Labor Relations Auth.*, 510 U.S. at 495 (emphasis and alteration in original)
(internal quotations omitted); *see also Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991).  Indeed,
"the focus, in assessing a claim under Exemption 6, must be solely upon what the requested
information *reveals*, not upon what it might lead to." *Associated Press v. DOD*, 554 F.3d at 292
(quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 180 (1991) (Scalia, concurring) (emphasis in
original)). More specifically, the focus is "not on the general public interest in the subject matter
of the FOIA request, but rather on the incremental value of the specific information being
withheld." *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C.Cir.2003).

Here, the privacy interests implicated in the records outweigh the public interest in the
records.  The BIA has determined through the Clerk's Office classification of decisions, that

22

Restricted non-precedential BIA decision contain extensive amounts of confidential information about individuals in immigration proceedings.  Crosby Decl. ¶¶ 7-8.  On the other hand, Plaintiff's asserted public interest is in knowing rules of decisions in specific cases so it can use them in subsequent litigation or to inform those in immigration proceedings.  *See* Ziesemer Decl. ¶¶ 3-7, 12.  Plaintiff already has access to many thousands of non-precedential decisions, *see* supra Section III.B.  Crosby Decl. ¶ 8.  The incremental value to the public interest in access to rules of decision in Restricted decisions is outweighed by the significant privacy interests in those cases.  *See Schrecker v. DOJ*, 349 F.3d at 661; *Am. Immigration Lawyers Assn. v. Executive Office for Immigration Review*, 830 F.3d 667, 674 (D.C. Cir. 2016) (in light of the information already disclosed by the agency, whether "the 'incremental value' served by disclosing [additional information] outweighs that person's privacy interest."); *Forest Service Employees for Environmental Ethics v. U.S. Forest Service*, 524 F.3d 1021, 1027 (9th Cir. 2008) (concluding that additional information should not be disclosed unless the "marginal additional usefulness" of such information is sufficient to overcome the privacy interests).

Further, requiring the Government to disclose the Restricted decisions would be unduly burdensome because the process of segregating confidential information in those decisions and making necessary redactions would require the Government to expend an enormous amount resources. *See* Schaaf Decl. ¶¶ 18-30; *see also supra* at Section IV; *Am. Fed'n Of Gov't Employees*, 907 F.2d at 209 (rejecting overbroad and unreasonably burdensome requests that undermine the ability of federal agencies to prioritize their resources notwithstanding any obligation to provide access to records under the FOIA).

## CONCLUSION

Based on the foregoing, the Court should dismiss complaint, and/or grant summary judgment in favor of the Government.

Dated:  New York, New York
        May 3, 2019

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

                                    BY: _/s/Arastu K. Chaudhury_____
                                        ARASTU K. CHAUDHURY
                                        Assistant United States Attorney
                                        86 Chambers Street, 3d Floor
                                        New York, NY 10007
                                        (212) 637-2633

                                        *Attorney for the Government*

To:     All counsel of record (by ECF)

24