UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK LEGAL ASSISTANCE GROUP, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BOARD OF IMMIGRATION APPEALS, | ) ) ) ) |
| EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | ) ) ) ) |
| and | ) ) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) |
| Defendants. | ) ) |

No.  18 Civ. 9495 (PAC)

**PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................1

ARGUMENT ........................................................................................................................1

    I.    FOIA's affirmative disclosure provision is judicially enforceable. ..............................1

    II.    "Final" does not mean "precedential." ......................................................................3

    III.    The government's self-inflicted burden does not excuse it from statutory compliance ...................................................................................................5

    IV.    Unpublished BIA decisions since November 1, 1996, must be posted online. .............6

    V.    The government has not justified its newly claimed reliance on exemption 6. ............7

CONCLUSION ................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Associated Press v. U.S. Department of Defense*,
    410 F. Supp. 2d 147 (S.D.N.Y. 2006)................................................................................7

*Cook v. National Archives & Records Administration*,
    758 F.3d 168 (2d Cir. 2014)..................................................................................................8

*Garcia v. DOJ*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002)...................................................................................6

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999)...............................................................................................8, 9

*Landmark Legal Foundation v. DOL*,
    278 F. Supp. 3d 420 (D.D.C. 2017) .....................................................................................6

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ...........................................................................................7

*Natural Resources Defense Council, Inc. v. EPA*,
    No. 17-cv-1243 (RDM), 2019 WL 1755976 (D.D.C. Apr. 19, 2019)..................................6

*New Prime Inc. v. Oliveira*,
    139 S. Ct. 532 (2019)........................................................................................................3–4

*New York City Employees Retirement System v. SEC*,
    45 F.3d 7 (2d Cir. 1995).......................................................................................................2

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004)...............................................................................................................3

*U.S. Department of State v. Ray*,
    502 U.S. 164 (1991).............................................................................................................8

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009)...................................................................................................8

**Administrative Decisions**

*In re Hernandez-Calderon*,
    2018 WL 8062932 (BIA Dec. 21, 2018) .............................................................................9

*In re Marcon*,
 2016 WL 1084485 (BIA Mar. 2, 2016) ............................................................................9

*In re Melendez-Melendez*,
 2017 WL 1508928 (BIA Mar. 15, 2017) ..........................................................................9

*Matter of A–M–*,
 25 I. & N. Dec. 66 (BIA 2009) .........................................................................................9

*Matter of J–R–G–P–*,
 27 I. & N. Dec. 482 (BIA 2018) .......................................................................................9

**Statutes, Rules, and Regulations**

5 U.S.C. § 531(13) ...............................................................................................................3

5 U.S.C. § 552(a)(2) ................................................................................................1, 5, 10

5 U.S.C. § 552(a)(2)(A) ........................................................................................................3

5 U.S.C. § 552(a)(2)(B) ........................................................................................................5

5 U.S.C. § 552(a)(4)(F)(i) .....................................................................................................2

5 U.S.C. § 552(a)(6)(B)(ii) ...................................................................................................6

5 U.S.C. § 552(b) ..................................................................................................................2

5 U.S.C. § 552(b)(6) .............................................................................................................7

5 U.S.C. § 704 ......................................................................................................................3

8 U.S.C. § 1252 ....................................................................................................................4

28 U.S.C. § 1291 ..................................................................................................................4

28 U.S.C. § 2342 ..................................................................................................................4

Electronic Freedom of Information Act Amendments of 1996,
 Pub. L. 104-231, 110 Stat. 3048 .......................................................................................7

Federal Rule of Evidence 408(a)(2) .....................................................................................5

8 C.F.R. § 1003.1(d)(7) ........................................................................................................4

8 C.F.R. § 1003.1(g) .........................................................................................................4, 5

**Miscellaneous**

Black's Law Dictionary (rev. 4th ed. 1968) ....................................................................................4

H.R. Rep. No. 89-1497 (1966)........................................................................................................4

S. Rep. No. 104-272 (1996)............................................................................................................7

## INTRODUCTION

In its response to the cross-motion of plaintiff New York Legal Assistance Group (NYLAG), the government seeks to justify its noncompliance with the Freedom of Information Act's (FOIA) electronic-reading-room provision primarily by inserting into FOIA words that do not appear there and ignoring those that do. As written, however, FOIA requires the Board of Immigration Appeals (BIA) to post online unpublished decisions issued since November 1, 1996. In addition, the government argues that exemption 6 justifies withholding more than 85 percent of the BIA's unpublished decisions *in full*, but the government's conclusory assertions do not satisfy its burden for justifying such massive withholding.

## ARGUMENT

**I.    FOIA's affirmative disclosure provision is judicially enforceable.**

The government's position is that Congress deemed certain records so important that it created a statutory mandate that they be publicly posted, yet also precluded enforcement of that mandate. Neither FOIA nor the Administrative Procedure Act (APA) allows that conclusion.

**A.**    The government contends that FOIA's jurisdictional grant "cabin[s]" the courts' "broad remedial powers" to enforce FOIA. Defs. Opp'n 3 (Doc. 33). But NYLAG's argument—and the supporting case law—flows from the very language of that jurisdictional grant empowering courts to enjoin any withholding of records in violation of FOIA. *See* Pl. Mem. 5–10 (Doc. 30).

The government asserts that NYLAG's reading "turns on its head the plain meaning of 'withholding,' which, in this context, is 'to refrain from granting, giving or allowing.'" Defs. Opp'n 4. The government, however, is refraining from granting, giving, or allowing online access to unpublished BIA opinions, as FOIA requires. 5 U.S.C. § 552(a)(2). The government would narrow "withholding of records" to mean "withholding of records *from production to an individual requester*." No principle of statutory construction supports that reading.

1

The government's next argument proves this point. Arguing that "withholding" must "be read consistently with other uses of the term in the statute," the government points to FOIA's exemptions, which it claims establish criteria for "withholding of records" from production to an individual requester. Defs. Opp'n 4 (citing 5 U.S.C. § 552(b)). But that reading of § 552(b) contradicts the government's own argument that it may withhold decisions from publication under exemption 6. If "withholding" records only meant not producing them to an individual requester, an agency could not rely on § 552(b)'s "withholding" criteria to redact information from records subject to § 552(a)(2), as authorization to "withhold" exempt information would not apply to public posting. The government also points to a subsection of FOIA that refers to "the production of agency records improperly withheld *from the complainant*." Defs. Opp'n 4 (citing 5 U.S.C. § 552(a)(4)(F)(i)) (emphasis added). That language, however, demonstrates only that when Congress meant to refer to withholding of records from an individual requester, it did so explicitly.

    **B.**    As to NYLAG's alternative APA claim, the government continues to insist that production to NYLAG would be an "adequate remedy" for its failure to post BIA opinions online, without addressing NYLAG's explanations that this is not so. *See* Pl. Mem. 11–13. The government's attempt to limit the Second Circuit's holding in *New York City Employees' Retirement System v. SEC* (*NYCERS*), 45 F.3d 7 (2d Cir. 1995), fails to grapple with what it agrees is the key fact of that case: "The Second Circuit held that because the plaintiffs could raise and adjudicate *the same issues* against someone other the agency, namely the company, an APA claim was precluded." Defs. Opp'n 6 (citing *NYCERS*, 45 F.3d at 14) (emphasis added). Although the *form* of relief would be different, "[i]f the plaintiffs prevail in the suit [against the company], they would then get all the relief they now seek from the [agency]." *NYCERS*, 45 F.3d at 14. Here, by

2

contrast, production to NYLAG would not provide "all the relief" it seeks, and the government has not identified any other remedy that would do so if, as it argues, FOIA does not.

The government's continued argument that NYLAG is not challenging "final agency action" but only seeking "broad improvements" in an "agency's overall program," Defs. Opp'n 7, is also wrong. NYLAG seeks to compel online posting of a *specific* category of documents—a "*discrete* agency action that [the agency] is *required to take*"—rather than leveling a "broad programmatic attack." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). As for final agency action, NYLAG challenges (1) the government's failure to comply with a specific statutory mandate, Compl. ¶ 40 (Doc. 1); (2) its adoption of a policy of not "mak[ing] the BIA's unpublished decisions available for public inspection in an electronic format as required by law," *id.*; *see also id.* ¶¶ 12–24; and (3) its final decision rejecting NYLAG's request that it comply with the law, *see id.* ¶ 29—each of which is final agency action. 5 U.S.C. §§ 551(13), 704. The government acknowledges the latter two actions and has filed two briefs defending them. It cannot simultaneously claim that no such actions occurred for NYLAG to challenge.

**II.** **"Final" does not mean "precedential."**

Contesting that § 552(a)(2)(A)'s plain language covers unpublished BIA decisions, the government insists that "final opinions" means "precedential opinions." Defs. Opp'n 8. To begin with, § 552(a)(2)(A) requires online posting of both "final opinions" and "orders." Because unpublished BIA decisions are also "orders," Pl. Mem. 13—a point the government fails to address—FOIA requires their online posting regardless of the meaning of "final opinions."

In any event, the suggestion that "final opinions" are limited to precedential opinions is plainly wrong. Although the government invokes the "ordinary meaning" of "final opinions" "*at the time Congress enacted the statute*," *id.* at 8 (quoting *New Prime Inc. v. Oliveira*, 139 S. Ct.

3

532, 535 (2019) (emphasis added)), it tellingly cites no definitions of "final" at that or any other time. In fact, "final" did not mean "precedential" when FOIA was enacted, just as it does not now: It meant "last" or "conclusive," coming at the "terminat[ion]" or "complet[ion]" of a case or a particular issue in a case. Black's Law Dictionary (rev. 4th ed. 1968). That "final" does not mean "precedential" is also apparent in the BIA's own regulations. *See* Pl. Mem. 15 (citing 8 C.F.R. § 1003.1(d)(7), (g)). Indeed, across federal law, "final" does not mean "precedential," but has its ordinary meaning of "conclusive" or "terminating." *See, e.g.*, 28 U.S.C. § 1291 (providing jurisdiction over appeals of "final decisions" of district courts); 28 U.S.C. § 2342 (providing jurisdiction to review "final orders" of agencies); 8 U.S.C. § 1252 (providing jurisdiction to review a "final order of removal"). And while the legislative history indicates congressional concern about ensuring availability of "precedential" opinions, the controlling statutory language makes clear that Congress achieved its purposes by requiring agencies to disclose "final" opinions.

The government contends that, when FOIA was enacted, the administrative "working law" that Congress ordered disclosed consisted of "'thousands of orders, opinions, statements, and instructions issued by hundreds of agencies.'" Defs. Opp'n 9 (quoting H.R. Rep. No. 89-1497, *reprinted in* 1966 U.S.C.C.A.N. at 2424). Therefore, it argues, Congress did not intend disclosure of "*hundreds of thousands* (or more) opinions from a single agency." *Id.* The opposite is true: Congress recognized that administrative decisionmaking had expanded greatly since the passage of the APA and was continuing to grow. *See* H.R. Rep. No. 89-1497, *reprinted in* 1966 U.S.C.C.A.N. at 2424. Congress identified a clear need for public access to this growing body of "case law." *Id.* That the BIA's hidden case law is now so voluminous would only heighten Congress's concern.

Moreover, unpublished BIA decisions are not "advisory interpretation[s]" of the law. Defs.

4

Opp'n 9–10. They are legally binding on the parties and on immigration judges and inferior officers, 8 C.F.R. § 1003.1(g), and are cited, used, and relied upon by government lawyers, immigration judges, and the BIA itself, Pl. Mem. 2 & nn.2–4. Thus, they fall squarely within § 552(a)(2)(A), which does not, unlike another part of § 552(a), apply only to policies and interpretations that have been "adopted by the agency." 5 U.S.C. § 552(a)(2)(B).

Lastly, FOIA provides two avenues for § 552(a)(2) compliance: Agencies can either make opinions "available for public inspection in an electronic format" or promptly publish them and offer copies for sale. As to unpublished BIA opinions, the government does neither. The government's declarant makes clear that the agencies do not publish and sell *any* of the decisions (let alone all of them) to anyone. Instead, they make a *subset* of unpublished BIA decisions available in hard copy at a physical reading room, where commercial entities collect some of them, to which those entities then sell access. *See* Crosby Decl. ¶¶ 5–6 (Doc. 35). FOIA requires federal agencies themselves, not downstream intermediaries, to provide access to their records.

**III.     The government's self-inflicted burden does not excuse it from statutory compliance.**

As NYLAG previously explained, the government could post thousands of existing unpublished BIA decisions online without any appreciable burden, and in any event, the claimed burden of posting past unpublished decisions cannot excuse it from posting future unpublished decisions. Pl. Mem. 18. The government's principal response is that the Court is barred by Federal Rule of Evidence 408(a) from considering one of the agency's responses to NYLAG's request, which acknowledged the availability of unpublished decisions dating from October 2015 through sometime in 2017. *See* Defs. Opp'n 16–17. The response at issue, however, was not "made during compromise negotiations about [NYLAG's] claim." Fed. R. Evid. 408(a)(2). Rather, the agency sent it to NYLAG before this lawsuit as a part of the administrative processing of NYLAG's

5

request, during which the government gave NYLAG an opportunity to narrow the request's scope, as FOIA specifically contemplates. *See* 5 U.S.C. § 552(a)(6)(B)(ii). Such communications are not settlement offers and are regularly considered by courts in reviewing agency responses to FOIA requests. *E.g. Garcia v. DOJ*, 181 F. Supp. 2d 356, 363–64 (S.D.N.Y. 2002); *Nat. Res. Def. Council, Inc. v. EPA*, No. 17-cv-1243 (RDM), 2019 WL 1755976, at *1–2 (D.D.C. Apr. 19, 2019); *see also Landmark Legal Found. v. DOL*, 278 F. Supp. 3d 420, 429 n.5 (D.D.C. 2017) (holding Rule 408(a) inapplicable to discussions about the scope of a FOIA request). In any event, the government has now provided much of this information in a sworn declaration filed with the Court, *see* Second Schaaf Decl. ¶¶ 5–7 (Doc. 34), mooting its meritless Rule 408 argument.

The government also has not rebutted NYLAG's argument that the agency must comply with § 552(a)(2) notwithstanding its claimed burden, whatever effect a similar burden might have under § 552(a)(3). The key distinction is the source of the burden. An agency has no preexisting obligation to search for, review, and produce records under § 552(a)(3) until it receives a request. By contrast, the statute itself affirmatively requires the agency to identify, review, and publicly post records subject to § 552(a)(2) without any request. Congress has categorically directed agencies to bear the burden of posting those records. That FOIA's administrative process may apply to requests under all three subsections of FOIA, as the government argues, Defs. Opp'n 16, is thus irrelevant. The burden the government complains of exists *only* because it has disregarded this statutory obligation for decades. The agency cannot rely on its own noncompliance with FOIA's mandate to excuse it from being required to remedy that violation.

**IV.     Unpublished BIA decisions since November 1, 1996, must be posted online.**

In arguing that only unpublished BIA decisions since 2016 are subject to public posting online, the government continues to ignore the language of the 1996 Electronic Freedom of

6

Information Act (E-FOIA) Amendments. That law required records subject to § 552(a)(2) to be made available online and permitted agencies to use "other electronic means" only if "computer telecommunications means have not been established by the agency." Pl. Mem. 23 (quoting E-FOIA Amendments of 1996, Pub. L. 104-231 § 4, 110 Stat. 3048, 3048 (codified as amended at 5 U.S.C. § 552(a)(2))). The government's legislative history is entirely consistent with this interpretation: "If an agency cannot make these materials available by computer telecommunications"—because computer telecommunications have not been established by the agency—"then the materials should be made available in some other electronic form, such as CD-ROM or on disk." S. Rep. No. 104-272, at 11 (1996). The FOIA Improvement Act of 2016 did not fundamentally change the obligation to provide records electronically, but merely recognized that the option of providing records in other electronic forms no longer made sense because "computer telecommunications" had been widely established across the federal government.

**V.     The government has not justified its newly claimed reliance on exemption 6.**

The government now argues for the first time that exemption 6 justifies withholding over 800,000 unpublished BIA decisions in full. Defs. Opp'n 21–23. Exemption 6 covers information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption "creates a heavy burden" for the government, as "the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA]." *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (internal quotation marks omitted); *see Associated Press v. U.S. Dep't of Def.*, 410 F. Supp. 2d 147, 155 (S.D.N.Y. 2006) ("Exemption 6 … on its face, creates a presumption in favor of disclosure."). Under exemption 6, the Court first determines the magnitude of any privacy interest involved, and, if the disclosure implicates a substantial privacy interest, the Court proceeds to "balance the public need for the information against the

individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of privacy." *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014). Importantly, the Supreme Court has recognized that the public interest in disclosure can be "adequately served" and the privacy interest in non-disclosure sufficiently protected by redacting "personal references or other identifying information" in the records. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 174–75 (1991).

The government provides scant support for its assertion that exemption 6 justifies broad withholding. It claims to have an "automated" process that identifies decisions as "restricted" based on undefined "criteria" that "qualify the decision as a restricted case," but offers no explanation of why exemption 6 justifies withholding those decisions in full rather than redacting private information. Crosby Decl. ¶ 7. "An agency resisting disclosure of the requested records has the burden of proving the applicability of an exemption." *Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotation marks omitted). Consistent with FOIA's "policy of full disclosure, the exemptions are narrowly construed with doubts resolved in favor of disclosure." *Halpern v. FBI*, 181 F.3d 279, 287 (2d Cir. 1999) (internal quotation marks omitted). "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemption[]." *Wilner*, 592 F.3d at 68. Such affidavits must "describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure," and "vague and conclusory affidavits" that fail to explain "the specific facts of the documents at hand" are insufficient. *Halpern*, 181 F.3d at 291, 293.

NYLAG does not dispute that the names of individuals in immigration proceedings, along with some other personally identifying information, such as A-numbers, may be properly redacted from some BIA decisions. The government does not explain why such redactions are insufficient

8

to protect the privacy interests involved. Instead, it asserts that "[t]he BIA has determined through the Clerk's Office classification of decisions, that Restricted non-precedential BIA decision [sic] contain extensive amounts of confidential information about individuals in immigration proceedings." Defs. Opp'n 22–23. The government's declarant, however, circularly says only that unpublished BIA decisions are sorted into "restricted" and "unrestricted" categories "based on criteria that qualify the decision as a restricted case." Crosby Decl. ¶ 7. The government provides no explanation of these "criteria" other than that "[r]estricted decisions generally implicate confidentiality and other privacy concerns and are more complex in nature" and may include "matters such as applications for asylum, protection under the Convention Against Torture [(CAT)], protection under the Violence Against Women Act [(VAWA)], unaccompanied juveniles, and other sensitive case criteria." *Id*. Vast categories are designated "restricted" based on an "automated report" without human review. *Id.* The government's description provides so little detail that accepting the withholding would amount to the "blind deference" that Congress rejected in FOIA. *Halpern*, 181 F.3d at 293.

The government's insistence that sweeping categories of unpublished decisions must be withheld in full is illogical and belied by its own actions. First, the BIA decisions available on Westlaw reveal several decisions involving supposedly "restricted" topics, with and without redactions. *See, e.g.*, *In re Hernandez-Calderon*, 2018 WL 8062932 (BIA Dec. 21, 2018) (CAT & asylum); *Matter of J–R–G–P–*, 27 I. & N. Dec. 482 (BIA 2018) (CAT); *In re Melendez-Melendez*, 2017 WL 1508928 (BIA Mar. 15, 2017) (unaccompanied juvenile); *In re Marcon*, 2016 WL 1084485 (BIA Mar. 2, 2016) (VAWA); *Matter of A–M–*, 25 I. & N. Dec. 66 (BIA 2009) (VAWA). Second, the government's "pilot project" of successfully redacting for potential release thousands of unpublished BIA decisions must have involved "restricted" decisions, as the BIA already

9

reviewed and made available in hard copy "unrestricted" decisions. Crosby Decl. ¶¶ 6–7. These actions refute the suggestion that "restricted" decisions must be withheld in their entirety.

Further, the government is wrong that public disclosure of unpublished decisions has limited "incremental value." Defs. Opp'n 23. As NYLAG has explained—and the government has not challenged—unpublished BIA decisions are cited by parties in immigration proceedings and relied upon by immigration judges and the BIA in adjudicating cases. Pl. Mem. 2–3, 17 & nn.2–4. Knowledge of and access to unpublished BIA decisions can be dispositive. *See* Ziesemer Decl. ¶ 9 (Doc. 31). Moreover, by including "final opinions" and "orders" under § 552(a)(2), Congress identified disclosure of these records as of interest to the public; denying access to over 85 percent of the BIA's case law is inconsistent with Congress's determination. The government cannot show that whatever privacy interests might remain in unpublished BIA decisions after removal of names and personally identifiable information outweigh the public interest in disclosure.

Finally, the government argues that the burden of segregating exempt and non-exempt information in these "restricted" BIA decisions justifies their withholding in full. Defs. Opp'n 23. The government fails to substantiate its claim by providing details about the extent of redactions necessary beyond names and individually identifying information. *Id.* More importantly, however, the source of any burden is not NYLAG's request but § 552(a)(2)'s mandate of proactive disclosure of all final opinions and orders, which cannot be defeated by a particular agency's plea that compliance with Congress's command would be too much work.

## CONCLUSION

The Court should grant NYLAG's motion for summary judgment and deny the government's combined motion to dismiss and motion for summary judgment.

Dated: May 24, 2019                                   Respectfully submitted,


<u>/s/ Patrick D. Llewellyn</u>
**PATRICK D. LLEWELLYN***
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-7727
         *Admitted pro hac vice

**BETH E. GOLDMAN, ESQ.**
New York Legal Assistance Group
7 Hanover Square, 18th Floor
New York, New York 10004
(212) 613-5000

**DANIELLE TARANTOLO**, of Counsel
**JANE GREENGOLD STEVENS,** of Counsel

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on May 24, 2019, I filed the foregoing through the Court's CM/ECF system, which causes a copy to be served on counsel for the defendants below by ECF and electronic mail:

> Arastu K. Chaudhury
> Assistant United States Attorney
> 86 Chambers Street
> New York, New York 10007
> Arastu.chaudhury@usdoj.gov

>> /s/ Patrick D. Llewellyn
>> Patrick D. Llewellyn