UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

NEW YORK LEGAL ASSISTANCE
GROUP,

               *Plaintiff,*

    *-against-*

BOARD OF IMMIGRATION APPEALS,
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW, and U.S. DEPARTMENT OF
JUSTICE,

               *Defendants.*

-------------------------------------------------------X

18 Civ. 9495 (PAC)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/13/19

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff seeks an order directing Defendants to make unpublished decisions of the Board of Immigration Appeals ("BIA") publicly available in an electronic reading-room pursuant to the Freedom of Information Act ("FOIA") or the Administrative Procedure Act ("APA"). Plaintiff asserts that the BIA's unpublished decisions are cited, used, and relied upon by government lawyers, immigration judges, and the BIA itself, but cannot be relied upon by immigration advocates because they are not publicly available. Defendants move to dismiss Plaintiff's claims pursuant to Fed. R. Crim. P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56(a). For the following reasons, the Court GRANTS Defendants' motion to dismiss and DENIES Plaintiff's motion for summary judgment.

## BACKGROUND[1]

    Plaintiff New York Legal Assistance Group ("NYLAG") is one of the largest providers of legal services to immigrants in New York City. Dkt. 1 ("Complaint" or "Compl.") ¶ 4. Among other things, NYLAG provides low-income immigrants with comprehensive legal

---

[1] The Court accepts as true the allegations in the complaint and resolves all factual disputes in Plaintiff's favor. *See Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *14 (S.D.N.Y. June 21, 2018).

services, including direct representation in removal proceedings and asylum. *Id.* NYLAG also offers immigrant community education, including "know your rights" presentations, immigration trainings, and fraud awareness and prevention programs. *Id.*

The BIA is an agency of the United States government and a component of the Executive Office for Immigration Review ("EOIR") and the Department of Justice ("DOJ"). *Id.* ¶ 7; 8 C.F.R. § 1003.1(a)(1). The BIA has jurisdiction to hear appeals from matters adjudicated by immigration judges and by district directors of the Department of Homeland Security in proceedings where one party is a noncitizen, a citizen, or a business entity, and the other party is the United States government. Compl. ¶ 12; 8 C.F.R. § 1003.1(b).

The BIA's decisions are binding on the parties unless overturned by the Attorney General or a federal court. Compl. ¶ 13; 8 C.F.R. § 1003.1(d)(7); 8 U.S.C. § 1252(a)(1). The BIA designates some of its final decisions as binding precedent, *see* 8 C.F.R. § 1003.1(g), and Defendants make those decisions available online in an electronic reading-room, *see* EOIR, *Agency Decisions* (last updated Mar. 20, 2019), https://www.justice.gov/eoir/ag-bia-decisions. Compl. ¶ 15. A majority vote of the permanent BIA members is required to designate a BIA decision as binding precedent. Compl. ¶ 15; 8 C.F.R. § 1003.1(g). Over the past decade, the BIA has voted to designate approximately thirty decisions each year as precedential. Compl. ¶ 15. All of the BIA's precedential decisions are published and made publicly available. *See id.*

The BIA also makes a small percentage of its unpublished decisions available online, *see* Compl. ¶ 17, and at the EOIR Law Library and Immigration Research Center in Falls Church, Virginia, *see* Compl. ¶ 19; Dkt. 31 ("Ziesemer Decl.") ¶ 12. The vast majority of unpublished BIA decisions, however, are not publicly available in an electronic format. Compl. ¶¶ 16, 18. Despite their general unavailability, the BIA's unpublished decisions are cited, used, and relied

upon by government lawyers, immigration judges, and the BIA itself. *See id.* ¶ 24; Ziesemer Decl. ¶ 8.

On June 8, 2018, NYLAG submitted a FOIA request to the BIA under 5 U.S.C. § 552(a)(2), requesting that the BIA make available in its online electronic reading-room: "All nonpublished decisions of the BIA (including concurring and dissenting opinions) from November 1, 1996, through the present." Dkt. 32 Ex. A. On August 8, 2018, EOIR denied NYLAG's request. *Id.* Ex. C. On September 11, 2018, NYLAG submitted an administrative appeal of EOIR's denial of its FOIA request. *Id.* Ex. D. The denial was affirmed, *id.* Ex. F; subsequently, NYLAG initiated this lawsuit, *see* Compl.

Defendants move to dismiss the Complaint or for summary judgment, Dkt. 24, and Plaintiff cross moves for summary judgment, Dkt. 29.

## DISCUSSION

### I.    Legal Standards

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Crim. P. 12(b)(1), the Court must determine whether it has the "statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When considering a Rule 12(b)(1) motion, the district court may refer to evidence outside the pleadings. *Id.* The court must accept all material factual allegations in the complaint as true, *see J.S. v. Attica Central Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), but Plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, *Makarova*, 201 F.3d at 113.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

3

As with a challenge brought under Rule 12(b)(1), courts assume "that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this assumption does not excuse a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief." *Id.* at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56. The Court must draw all reasonable inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "FOIA cases are generally resolved on motions for summary judgment." *N.Y. Times Co. v. U.S. Secret Serv.*, No. 17 Civ. 1885 (PAC), 2018 WL 722420, at *3 (S.D.N.Y. Feb. 5, 2015). Under FOIA, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). The agency may satisfy its burden by affidavits, rather than Local Civil Rule 56.1 statements, *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012), but such affidavits must contain more than "conclusory assertions," *N.Y. Times v. U.S. Secret Serv.*, 2018 WL 722420, at *3, and must provide "reasonably specific detail" justifying the agency's action that is not "controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018). Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

## II.   Analysis

### A.   Freedom of Information Act

5 U.S.C. § 552(a)(2)(A)—the "reading-room provision" of FOIA—provides that: "Each agency, in accordance with published rules, shall make available for public inspection in an

electronic format . . . final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases . . . unless the materials are promptly published and copies offered for sale." "A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if—(i) it has been indexed and either made available or published as provided by this paragraph; or (ii) the party has actual and timely notice of the terms thereof." *Id.*

FOIA provides that an individual may make a "request for records . . . under paragraph (1), (2), or (3) of [§ 552(a)]." *Id.* § 552(a)(6)(A); *see also id.* § 552(a)(6)(C)(i). If the agency fails to respond within the time allotted by statute or if the requester is unsatisfied with the result of the administrative process, the requester may file a complaint in the appropriate federal court. *Id.* In such a case, the court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

Here, Plaintiff does not seek to compel Defendants to produce certain documents, but rather to make publicly accessible all unpublished BIA decisions from 1996 to the present in an electronic reading-room. While the BIA may have an obligation to make available for public inspection certain opinions, *id.* § 522(a)(2), this Court only has jurisdiction to order the production of documents to the complainant, *see id.* § 552(a)(4)(B). Plaintiff does not seek this relief.

The Court has not located any binding precedent on this issue in the Second Circuit. Plaintiff urges the Court to grant an injunction based on other FOIA cases in this Circuit where the courts acknowledged that injunctive relief could be appropriate in FOIA "pattern or practice" claims. *See, e.g., Panjiva, Inc. v. U.S. Customs & Border Protection*, 342 F. Supp. 3d 481, 495-

96 (S.D.N.Y. 2018) (recognizing that courts in the Second Circuit "have acknowledged that declaratory or injunctive relief would be appropriate if plaintiffs successfully alleged a FOIA pattern or practice claim" but denying APA claim because FOIA provided adequate substitute remedy). But the Second Circuit has not recognized the viability of such claims. *See Pietrangelo v. U.S. Army*, 334 F. App'x 358, 359 (2d Cir. 2009) ( "This Court has not yet recognized or articulated the inquiry relevant to a pattern or practice claim in the FOIA context, but . . . need not do so here."). Moreover, contrary to Plaintiff's suggestion, the Second Circuit's willingness to review the adequacy of an agency's search and production of records to an individual does not provide a path for this Court to grant injunctive relief requiring broad publication of thousands of records in an electronic reading-room. *See, e.g., N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100, 123-24 (2d Cir. 2014) (reviewing adequacy of agency's search for responsive records); *Fox News Network, LLC v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 158, 162 (2d Cir. 2010) (order agency to conduct additional searches).

One Circuit court has considered this novel question and held that a complainant's relief under § 522(a)(2)(A) is limited to the production of the requested documents to the complainant. *See Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235, 1243-44 (D.C. Cir. 2017) ("CREW"). *CREW* considered a request to have the Department of Justice's Office of Legal Counsel ("OLC") comply with its obligations under the reading-room provision, § 552(a)(2)(A). *CREW*, 846 F.3d at 1240. The D.C. Circuit held that the plaintiff could seek production of the documents but was not entitled to an injunction forcing the agency to change its website. *Id.* at 1242-44. The court reasoned that "[a]uthorizing a court to order an agency to make documents 'available for public inspection' would reach beyond § 552(a)(4)(B)'s focus on 'relieving the injury suffered by the individual complainant' to remedy an injury suffered by the general public"—a result the court was precluded from granted under

6

*Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191 (D.C. Cir. 1996). *CREW*,
846 F.3d at 1243.

In *Kennecott*, the court implicitly considered § 522(a)(4)(B) as a whole, rather than
separating the first clause, "[a court] has jurisdiction to enjoin the agency from withholding
agency records," from the second clause, "and to order the production of any agency records
improperly withheld from the complainant," *id.* § 552(a)(4)(B). *See Kennecott*, 88 F.3d 1191 at
1203. The court ruled that FOIA did not authorize the district court to order publication of
records in the Federal Register. *See id.* Although *Kennecott* did not relate to the reading-room
provision, the court in *CREW* followed *Kennecott*'s reasoning and held that injunctive relief was
limited to the production of documents to the complainant where the complainant sought for an
agency to comply with the reading-room provision. *CREW*, 846 F.3d at 1244.

Plaintiff urges that the Court not follow *CREW*. The Court recognizes that *CREW* is not
binding; but its reasoning is sound and squarely applicable. Plaintiff seeks exceedingly broad
relief—an injunction requiring the BIA to publish many thousands of unpublished,
nonprecedential cases totaling millions of pages for over 20 years. There is no authority for the
remedy Plaintiff seeks. The Court is not "empowered to enter general orders compelling
compliance with broad statutory mandates." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66
(2004). It is the BIA's obligation to comply with FOIA, and the Court's role to provide relief to
individual complainants, not the public, for violations. *See id.* To hold otherwise "would mean
that it would ultimately become the task of the supervising court, rather than the agency, to work
out compliance with the broad statutory mandate, injecting the judge into day-to-day agency
management." *Id.*

Moreover, even if the Court were to read the two clauses of § 522(a)(4)(B) separately
instead of as a whole, the court's jurisdiction is "to enjoin the agency from withholding agency

7

records." The use of the term "withholding" suggests, in the context of the statute, that the records were withheld from a complainant. *See Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013) (a term's meaning should be discerned by "looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 157 (2d Cir. 2007) ("Fundamental to any task of interpretation is the principle that text must yield to context."). The jurisdictional grant in § 522(a)(4)(B) does not say anything about enjoining an agency to require publication of withheld records.

Regardless of whether such opinions are "final opinions" requiring publication under the reading-room provision, the relief Plaintiff seeks is beyond this Court's jurisdiction. *See CREW*, 846 F.3d 1235; *Kennecott*, 88 F.3d 1191.

### B. Administrative Procedure Act

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The Second Circuit has stated that it "may not even entertain [a] claim against [an] agency . . . if the plaintiffs have an adequate alternative legal remedy against someone else—a remedy that offers the same relief the plaintiffs seek from the agency." *New York City Employees' Ret. Sys. v. S.E.C.*, 45 F.3d 7, 14 (2d Cir. 1995). The Second Circuit has not determined that a plaintiff's remedy must be exactly the same as that requested for an APA claim to be precluded. For example, in *New York City Employees' Ret. Sys., supra*, the plaintiffs sued the Securities and Exchange Commission ("SEC") to enjoin the SEC from violating section 553(b) of the APA by changing its interpretation of a rule (regarding what proposals must be included in the proxy materials of a company's annual shareholder meeting) without adhering to a notice and comment period. *Id.* at 9. The SEC interpreted the rule "so that corporations could not exclude proposals regarding 'matters which have significant policy, economic or other

implications inherent in them,'" in the wake of controversy over the company Cracker Barrel's failure to include a shareholder proposal prohibiting discrimination on the basis of sexual orientation. *Id.* at 10. The Second Circuit dismissed the APA claim because it determined that an effective alternative to suing the SEC would be to sue offending companies, such as Cracker Barrel. *Id.* at 14. It did so, even though enjoining Cracker Barrel to include certain proposals in proxy materials is not the same remedy as enjoining the SEC from changing its interpretation of a rule without adhering to a notice and comment period.

Indeed, the D.C. Circuit similarly recognized in *CREW* that "section 704 requires only an *adequate* alternative" and not an *identical* one. *CREW*, 846 F.3d at 1245. The court held that there is "little doubt that FOIA offers an 'adequate remedy' within the meaning of section 704" for seeking that an agency comply with its disclosure obligations under the reading-room provision of FOIA. *Id.* Even though FOIA provides only for the production of records to a claimant, and not publication of records in an electronic reading-room, the court stated that it saw "no yawning gap between the relief FOIA affords and the relief CREW seeks under the APA." *Id.* at 1246. The court concluded that "despite some mismatch between the relief sought and the relief available, FOIA offers an 'adequate remedy' within the meaning of section 704 such that CREW's APA claim is barred." *Id.* Similarly here, FOIA provides an alternative, adequate remedy to Plaintiff, and the APA claim must be dismissed.

Since the Court does not have jurisdiction to enter the requested relief, it need not reach the question of whether the request is unduly burdensome, which Defendants raised in their summary judgment motion. It is worth noting that the parties have widely varying views on the burden that would be imposed on Defendants to comply with Plaintiff's request, and whether it matters that Defendants' burden might be self-inflicted by their alleged noncompliance. This

Order does not prevent Plaintiff from seeking production of the requested records, and the issue of burden would be considered if Plaintiff amends its Complaint to seek such relief.

## **CONCLUSION**

For the reasons stated, the Court GRANTS Defendants' motion to dismiss the Complaint, and DENIES Plaintiff's motion for summary judgment.  The Clerk of Court is directed to terminate Dkts. 24 and 29, and to close the case.

Dated: New York, New York
       August *13*, 2019

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

10